FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2004 JUN -3  P 3: 07

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| ERIC R. BAHE, Custodian, CGM Roth Conversion IRA,<br><br>**Plaintiff,**<br><br>VS.<br><br>FRANKLIN/TEMPLETON DISTRIBUTORS, INC., FRANK T. CROHN, BURTON J. GREENWALD, CHARLES RUBENS II, LEONARD RUBIN, and WILLIAM J. LIPPMAN,<br><br>**Defendants, and**<br><br>FRANKLIN BALANCE SHEET INVESTMENT FUND,<br><br>**Nominal Defendant.** | Civil Action No.<br><br>JURY TRIAL DEMANDED<br><br>**04 - 11195 PBS**<br><br>MAGISTRATE JUDGE Bowler |

RECEIPT # 56333
AMOUNT $ 150 -
SUMMONS ISSUED 7
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 6-3-04

**DERIVATIVE COMPLAINT**

**INTRODUCTION**

1.   This is an action brought by the Plaintiff against the Defendants, derivatively on behalf of the Franklin Balance Sheet Investment Fund (the "Fund") for breach by the Defendants of their fiduciary duty to the Fund and the Fund's shareholders and for violation of Section 36(b) of the Investment Company Act of 1940 (the "Investment Company Act"), 15 U.S.C. §80a-35(b). Plaintiff alleges herein that Defendant Franklin/Templeton Distributors, Inc. ("Distributors") breached its fiduciary duty to the Fund and its shareholders and violated Section 36(b) of the Investment Company Act by charging and receiving from the Fund, Rule

12b-1 Distribution Fees (the "Distribution Fees") which are excessive. The Plaintiff further alleges that Defendants Frank T. Crohn, Burton J. Greenwald, Charles Rubens II, Leonard Rubin and William J. Lippman, the trustees of the Fund, violated their fiduciary duty to the Fund and its shareholders by approving the payment of the excessive Distribution Fees to Defendant Distributors. Plaintiff seeks recovery for the Fund, from Defendants, of the excessive Distribution Fees paid by the Fund to Defendant Distributors and an injunction, enjoining the continued payment of the Distribution Fees to the Defendant Distributors.

## **JURISDICTION AND VENUE**

2. This action arises under and is brought pursuant to Section 36(b) of the Investment Company Act and the common law of the Commonwealth of Massachusetts.

3. This Court has jurisdiction over this action pursuant to Section 44 of the Investment Company Act and 28 U.S.C. §§1331 and 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this district pursuant to Section 44 of the Investment Company Act and 28 U.S.C. §1391(b), because the Fund is organized pursuant to Massachusetts law and many of the acts complained of herein occurred in substantial part in this district.

5. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, the mail and the interstate telephonic voice and data communications.

## **PARTIES**

6.  The Plaintiff Eric R. Bahe, Custodian, CGM Roth Conversion IRA, ("Plaintiff") is a resident of the State of Illinois. In his capacity as Custodian of his CGM Roth Conversion IRA, he owns 155.76 shares of the Fund.

7.  Defendant Franklin/Templeton Distributors, Inc. ("Distributors") is the principal underwriter of the Fund, and is a direct or indirect wholly-owned subsidiary of Franklin Resources, Inc. ("Resources"), which also indirectly wholly owns the Fund's investment advisor, Franklin Advisory Service LLC ("Franklin Advisory").

8.  The Nominal Defendant, Franklin Balance Sheet Investment Fund (the "Fund"), is an open-end investment management company registered under the Investment Company Act. The Fund is a series of the Franklin Value Investors Trust (the "Trust"), which is a Massachusetts business trust.

9.  Defendant Frank T. Crohn ("Crohn") is and has been a trustee of the Trust since 1989. Crohn is a resident of the State of New York.

10. Defendant Burton J. Greenwald ("Greenwald") is and has been a trustee of the Trust since 2001. Greenwald is a resident of the Commonwealth of Pennsylvania.

11. Defendant Charles Rubens II ("Rubens") is and has been a trustee of the Trust since 1989. Rubens is a resident of the State of New York.

12. Defendant Leonard Rubin ("Rubin") is and has been a trustee of the Trust since 1989. Rubin is a resident of the State of Florida.

13. Defendant William J. Lippman ("Lippman") is and has been a trustee of the Trust since 1989. He has also been President of Franklin Advisory since 1989 and Chief

Executive Officer-Investment Management of Franklin Advisory since 2002. Lippman is a resident of the State of New Jersey.

14. Defendants Crohn, Greenwald, Rubens, Rubin and Lippman are collectively referred to herein as the "Trustee Defendants."

15. The Trustee Defendants and the Defendant Distributors are collectively referred to herein as the "Defendants."

## FACTS REGARDING THE FUND

16. The business and affairs of the Trust and of the Fund are purportedly managed under the direction of the Trust's Board of Trustees. The Board of Trustees of the Fund consists of the five Trustee Defendants.

17. The Fund is organized pursuant to the Agreement and Declaration of Trust of Franklin Balance Sheet Investment Fund, a Massachusetts business trust, dated September 11, 1989, which is filed with the Secretary of State of the Commonwealth of Massachusetts. Pursuant to the Certificate of Amendment of Agreement and Declaration of Trust of Franklin Balance Sheet Investment Fund dated September 21, 1995, which Certificate of Amendment is filed with the Secretary of State of the Commonwealth of Massachusetts, the September 11, 1989 Agreement and Declaration of Trust was amended to, *inter alia,* change the name of the Trust to the Franklin Value Investors Trust. The Fund is a series of the Franklin Value Investors Trust. The September 11, 1989 Agreement and Declaration of Trust, as amended by the September 21, 1995, Certificate of Amendment, is hereinafter referred to as the "Declaration of Trust."

18. Section 7 of the Declaration of Trust provides that the Fund is to be governed by and administered pursuant to the laws of the Commonwealth of Massachusetts. Specifically, that section of the Declaration of Trust provides as follows:

> Section 7.    Applicable Law. This Agreement and Declaration of Trust is created under and is to be governed by and construed and administered according to the laws of The Commonwealth of Massachusetts. The Trust shall be of the type commonly called a Massachusetts business trust, and without limiting the provisions hereof, the Trust may exercise all powers which are ordinarily exercised by such a trust.

19. Distributors is an "affiliated company" and an "affiliated person" of Franklin Advisory, as those terms are defined in Sections 2(a)(2) and 2(a)(3)(C) of the Investment Company Act. Distributors is an affiliated person of Franklin Advisory as that term is used in Section 36(b) of the Investment Company Act.

20. Franklin Advisory is the "investment advisor" to the Fund, as that term is defined in Section 2(a)(20) of the Investment Company Act, and as that term is used in Section 36(b) of the Investment Company Act. Franklin Advisory is an "affiliated company" and an "affiliated person" of the Defendant Distributors as those terms are defined in Sections 2(a)(2) and 2(a)(3)(C) of the Investment Company Act. Franklin Advisory is an affiliated person of Distributors as that term is used in Section 36(b) of the Investment Company Act.

21. Defendant Lippman is considered by the Trust to be an "interested person" because he is an officer or director of some of the subsidiaries of Resources, which is the parent company of the Trust's investment advisor, Franklin Advisory, and Distributors, and hence he is not a disinterested trustee of the Trust.

22. The other current trustees of the Trust are Defendants Crohn, Greenwald, Rubens and Rubin.

23. Defendants Crohn, Greenwald, Rubens and Rubin have been designated by the Fund as persons who are not interested persons of the Trust, as defined in the Investment Company Act, and hence, they have been designated by the Fund as "Non-interested" trustees. Those Trustees are hereinafter collectively referred to as the "Non-interested Trustees" or "Independent Trustees" of the Trust and the Fund during the time that they served as trustees. The use of those terms to refer to those trustees is based upon that designation by the Fund, and is not a statement by Plaintiff that those Trustees have been properly designated as non-interested or independent trustees under the Investment Company Act.

24. The trustees of the Trust identified herein are sometimes collectively referred to herein as the "Trustees" or the "Board of Trustees" of the Trust and the Fund.

25. For all purposes under the Investment Company Act and SEC Rule 12b-1 promulgated thereunder, the Board of Trustees of the Trust constitute the "board of directors" of the Trust and the Fund as the term "board of directors" is used in the Investment Company Act and Rule 12b-1.

26. For all purposes under the Investment Company Act and SEC Rule 12b-1, the Trustees are the "directors" of the Trust and the Fund as the term "directors" is used in the Investment Company Act and Rule 12b-1.

27. Each of the "Non-interested" Trustees is a director or trustee of other portfolios in the Franklin fund complex. Defendant Crohn is a director or trustee of 5 portfolios in the Franklin fund complex, and Defendants Greenwald, Rubens and Rubin are each directors or

trustees of 12 portfolios in the Franklin fund complex, though not necessarily the same portfolios.

## SUBSTANTIVE ALLEGATIONS

### The Excessive Rule 12b-1 Distribution Fees

28.  From its inception on April 2, 1990 through May 1, 2002, shares of the Fund could be purchased by the public, including persons or entities which were already shareholders of the Fund and persons and entities which were not yet shareholders of the Fund.

29.  As of May 1, 2002, the Fund ceased offering and selling shares of the Fund to any investors who were not already shareholders of the Fund (with the exception of 529 Gift Product Investors and new participants in existing retirement plans). In the mutual fund industry, this is referred to as "closing" the Fund to new investors.

30.  Accordingly, since May 1, 2002, no shares of the Fund have been sold to any investors who were not shareholders of the Fund prior to May 1, 2002 (with the exception of 529 Gift Product Investors and new participants in existing retirement plans). Likewise, since May 1, 2002, the only sales by the Fund of its shares have been to persons or entities which were shareholders of the Fund prior to May 1, 2002 (with the exception of 529 Gift Product Investors and new participants in existing retirement plans).

31.  The period from May 1, 2002 to the present is sometimes referred to herein as the "Closed To New Investors Period."

32. SEC Rule 12b-1 permits, subject to specified requirements, the establishment by a registered open-end management investment company of a Rule 12b-1 plan and the entering into by a registered open-end management company, a Rule 12b-1 agreement, which plan and agreement provide for the payment by the registered open-end management investment company for activities which are primarily intended to result in the sale of shares issued by such company, including, but not necessarily limited to, advertising, compensation of underwriters, dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature.

33. SEC Rule 12b-1 requires that:

a. any Rule 12b-1 plan providing for distribution payments to be made by a registered open-end management investment company, must be terminable at any time by a vote of a majority of the disinterested directors of the investment company;

b. any agreement to implement a Rule 12b-1 plan providing for distribution payments to be made by a registered open-end management investment company, must be terminable, without penalty, on 60 days notice by a vote of a majority of the disinterested directors of the investment company;

c. any Rule 12b-1 plan or agreement to implement such a plan, which provides that it shall continue in effect for more than one year, must provide that such continuance be specifically approved, at least annually, by a majority of the board of directors and a majority of the disinterested directors;

d. directors of an investment company may not approve the implementation or the continuation of a Rule 12b-1 plan, unless they conclude, in the exercise of reasonable

business judgment and in light of their fiduciary duties under state law and under Sections 36(a) and (b) of the Investment Company Act, that there is a reasonable likelihood that the plan will benefit the investment company and its shareholders.

34. In light of the lack of any public sales or distribution of shares of the Fund since May 1, 2002, the costs incurred by the Defendant Distributors or any other affiliated company of the Defendants since May 1, 2002, for any activity which was or will be primarily intended to result in the sale of shares issued by the Fund since May 1, 2002, including, but not limited to, advertising, compensation of underwriters, dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature, have been and will continue to be minimal.

35. The Fund enacted a plan (the "Plan") purportedly pursuant to SEC Rule 12b-1, pursuant to which the Fund would pay Distributors an annual Distribution Fee (paid out on an ongoing basis) equal to 0.25% of the net asset value of the Fund's Class A shares, 1% of the net asset value of the Fund's Class B and C shares and 0.5% of the net asset value of the Fund's Class R shares.

36. The Plan was approved by a unanimous vote of the Board of Trustees of the Fund and by a unanimous vote of the "Non-interested" Trustees.

37. The Fund also entered into an agreement with the Defendant Distributors (the "Agreement"), pursuant to the Plan and purportedly pursuant to Rule 12b-1, pursuant to which the Fund would pay the Distributors an annual Distribution Fee (paid out on an ongoing basis) equal to 0.25% of the net asset value of the Fund's Class A shares, 1% of the net asset value of the Fund's Class B and C shares, and 0.5% of the Fund's Class R Shares.

38. The Agreement was approved by a unanimous vote of the Board of Trustees of the Fund and by a unanimous vote of the "Non-interested" Trustees of the Fund.

39. The Plan and Agreement both provide (as required by Rule 12b-1(b)(3)(i)) that they may continue for more than one year only if they are specifically approved by a vote of the Board of Trustees and by a vote of the "Non-interested" Trustees, at least annually.

40. The Trustees and the "Non-interested" Trustees, specifically voted unanimously to continue the Plan and the Agreement, at least annually since their original approval of the Plan and the Agreement.

41. The Trustees, at least quarterly since the adoption of the Plan and the Agreement, have received a written report of the amounts paid by the Fund to Distributors and the purposes for which such expenditures were made. The Trustees did not vote to discontinue or terminate the Plan or the Agreement after receipt of any of those reports.

42. Since May 1, 2002, when the Fund ceased selling shares to the general public, the Fund has been charged by, and has paid to, Distributors, pursuant to the Plan and the Agreement, a Distribution Fee (paid on an ongoing basis) equal to approximately 0.25% of the net asset value of the Fund's Class A shares, 1% of the net asset value of the Fund's Class B and C shares, and 0.5% of the Fund's R shares per year. Plaintiff estimates that since May 1, 2002, the Fund paid Distributors more than $15 million in Distribution Fees. Plaintiff estimates that in the one year period prior to the filing of this action, the Fund paid Distributors more than $7.5 million in Distribution Fees.

43. The Distribution Fees paid by the Fund to Distributors during the Closed To New Investors Period were excessive, because those payments materially exceeded the

expenses incurred by the Defendant Distributors during that time period, which expenses were incurred primarily to result in the sale of shares issued by the Fund during that time period, including, but not limited to, advertising, compensation of underwriters, dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature. In fact, as explained above, those expenses of the Defendant Distributors during the Closed To New Investors Period were minimal.

44.     Plaintiff estimates that the Fund, after the filing of this Complaint, will continue to pay Distributors approximately the same periodic amounts for Distribution Fees as it has since May 1, 2002. Accordingly, the Plaintiff estimates that the Fund will pay Distributors more than $625,000 in Distribution Fees each month after the filing of this Complaint.

45.     The Distribution Fees that will be paid by the Fund to Distributors after the filing of this Complaint will be excessive, because those payments will materially exceed the expenses that will be incurred by Distributors after the filing of the Complaint which expenses will be incurred primarily to result in the sale of shares issued by the Fund after the filing of this Complaint, including, but not limited to, advertising, compensation of underwriters, dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature. In fact, as explained above, those expenses of Distributors after the filing of this Complaint will be minimal.

46.     Because no sales of Fund shares have been, or will be, made to the public after May 1, 2002, the continuation of the Fund's Plan and the Fund's Agreement with the Defendant Distributors after May 1, 2002 was (and continues to be) without any reasonable basis because there was (and continues to be) no reasonable likelihood that the continuation

of the Plan and the Agreement during that time period would benefit the Fund or its shareholders.

47. Because no sales of Fund shares have been, or will be, made to the public after May 1, 2002, the payment by the Fund of the above referenced Distribution Fees since May 1, 2002, was (and continues to be) without any reasonable basis because there was (and continues to be) no reasonable likelihood that the payment by the Fund of the above-referenced Distribution Fees to the Defendant Distributors during that time period would benefit the Fund or its shareholders.

48. The Defendants have admitted that the purpose of the Plan and Agreement, prior to the Fund being closed to new investors on May 1, 2002, was to increase sales of the Fund's shares, which they believed would benefit the Fund and its shareholders.

49. The Defendants have also admitted that since the Fund was closed to new investors on May 1, 2002, the Plan and Agreement no longer served the purpose of increasing sales of the Fund's shares, and no longer benefitted the Fund and its shareholders by increasing sales of the Fund's shares.

50. Indeed, the Defendants have admitted that because the Fund is closed to new investors, some the Distribution Fees paid by the Fund to the Defendant Distributors benefits only Distributors, since those Distribution Fees are used to pay off loans on which Distributors, and not the Fund, is the obligor.

51. The admissions described in the preceding three paragraphs are contained in the Fund's Statement of Additional Information ("SAI") dated March 1, 2004, where the Rule 12b-1 fees are described as follows:

> **Distribution and service (12b-1) fees.** The board has adopted a separate plan pursuant to Rule 12b-1 for each class. Although the plans differ in some ways for each class, **each plan is designed to benefit each Fund and its shareholders. The plans are expected to**, among other things, **increase advertising of each Fund, encourage sales of each Fund** and service to its shareholders, **and increase or maintain assets of each Fund** so that certain fixed expenses may be spread over a broader asset base, resulting in lower per share expense ratios. In addition, a positive cash flow into a Fund is useful in managing the Fund because the manager has more flexibility in taking advantage of new investment opportunities and handling shareholder redemptions.
>
> **Under each plan, the Funds pay Distributors or others for the expenses of activities that are primarily intended to sell shares of the class.** These expenses also may include service fees paid to securities dealers or others who have executed a servicing agreement with a Fund, Distributors or its affiliates and who provide service or account maintenance to shareholders (service fees); the expenses of printing prospectuses and reports used for sales purposes, and of preparing and distributing sales literature and advertisements; and a prorated portion of Distributors' overhead expenses related to these activities. Together, these expenses, including the service fees, are "eligible expenses." The 12b-1 fees charged to each class are based only on the fees attributable to that particular class. **Because the Balance Sheet and MicroCap Value Funds are currently closed to new investors, the amounts paid by such Funds under their respective plans are** primarily to pay for ongoing shareholder servicing and **in the case of the Balance Sheet Fund's Class B plan, to pay third party financing entities that have provided financing to Distributors in connection with advancing commissions to securities dealers.**

*Id.* at 42-43, emphasis added.

52. The Trustees of the Fund have a fiduciary duty to the Fund and its shareholders under the common law of the Commonwealth of Massachusetts.

13

53. By approving of the continuation of the Plan and the Agreement since May 1, 2002, although there was no reasonable likelihood that payment by the Fund of the Distribution Fees set forth in the Plan and the Agreement after May 1, 2002 would benefit the Fund or its shareholders, the Trustees breached their fiduciary duty to the Fund and its shareholders under the common law of the Commonwealth of Massachusetts, and breached their obligations under SEC Rule 12b-1(e).

54. By approving of the continuation of the Plan and Agreement since May 1, 2002, although there was no reasonable likelihood that payment by the Fund of the Distribution Fees set forth in the Plan and Agreement after May 1, 2002 would benefit the Fund or its shareholders, the Trustee Defendants acted, or failed to act, with willful misfeasance, bad faith, gross negligence, and reckless disregard of the duties involved in the conduct of the office of Trustee.

55. By failing to terminate the Plan and Agreement since May 1, 2002, although there was no reasonable likelihood that payment by the Fund of the Distribution Fees set forth in the Plan and the Agreement after May 1, 2002 would benefit the Fund or its shareholders, the Trustees breached their fiduciary duty to the Fund and its shareholders under the common law of the Commonwealth of Massachusetts, and breached their obligations under SEC Rule 12b-1(e).

56. By failing to terminate the Plan and Agreement since May 1, 2002, although there was no reasonable likelihood that payment by the Fund of the Distribution Fees set forth in the Plan and the Agreement after May 1, 2002 would benefit the Fund or its shareholders, the Trustee Defendants engaged in conduct, and continue to engage in conduct, which

constituted and continues to constitute, wilful misfeasance, bad faith, gross negligence, and reckless disregard of the duties involved in the conduct of the office of the Trustee.

57. As an affiliated company of Franklin Advisory, the Fund's investment advisor, Distributors has a fiduciary duty to the Fund and its shareholders. As an affiliated company of Franklin Advisory, Distributors is liable under Sec. 36(b) of the Investment Company Act to the Fund for excessive compensation or payments paid to it by the Fund, within the period commencing one year prior to the filing of this action.

58. By collecting excessive Distribution Fees from the Fund since May 1, 2002, Distributors breached its fiduciary duty to the Fund and its shareholders and is liable for those excessive Distribution Fees paid to it by the Fund pursuant to Sec. 36(b) of the Investment Company Act, within the period commencing one year prior to the filing of this action.

59. As an affiliated company of Franklin Advisory, Distributors has a fiduciary duty to the Fund and its shareholders and is liable under the common law of the Commonwealth of Massachusetts for excessive compensation or payments paid to it by the Fund since May 1, 2002.

60. By collecting excessive Distribution Fees from the Fund since May 1, 2002, Distributors breached its fiduciary duty to the Fund and its shareholders and is liable for those excessive Distribution Fees paid to it by the Fund under the common law of the Commonwealth of Massachusetts.

61. By continuing to collect excessive Distribution Fees from the Fund after the filing of this Complaint, Distributors continue to breach its fiduciary duty to the Fund and its shareholders and to violate Sec. 36(b) of the Investment Company Act, and is liable for those

excessive Distribution Fees that will be paid to it by the Fund pursuant to Sec. 36(b) of the Investment Company Act and the common law of the Commonwealth of Massachusetts.

## SECTION 36(b) DERIVATIVE ALLEGATIONS

62. This action is brought by the Plaintiff, derivatively, on behalf of the Fund, pursuant to Section 36(b) of the Investment Company Act, to recover excessive Rule 12b-1 Distribution Fees paid by the Fund to Distributors, during the period commencing one year prior to the commencement of this action.

63. The charging of and receiving of excessive distribution fees by Distributors from the Fund constituted a breach of Distributors fiduciary duty to the Fund and the shareholders of the Fund under Sec. 36(b) of the Investment Company Act.

64. This action is brought by the Plaintiff, derivatively, on behalf of the Fund, pursuant to Rule 36(b) of the Investment Company Act. Accordingly, the Plaintiff was not required to, and has not, made demand upon the Trustees of the Fund to bring this action on behalf of the Fund. See, Daily Income, Inc. v. Fox, 464 U.S. 523, 104 S.Ct. 831 (1984).

## RULE 23.1, F. R. CIV. P., DERIVATIVE ALLEGATIONS

65. This action is also brought by the Plaintiff, derivatively, on behalf of the Fund, pursuant to Rule 23.1, F. R. Civ. P., to recover excessive Rule 12b-1 Distribution Fees paid by the Fund to Distributors during the Closed To New Investors Period.

66. The verification by the Plaintiff required by Rule 23.1, F. R. Civ. P., is filed herewith.

67. The charging of and receiving of excessive Distribution Fees by Distributors from the Fund constituted a breach of Distributors' fiduciary duty to the Fund and its shareholders, which fiduciary duty arises under and is governed by Massachusetts law.

68. The Trustee Defendants' voting to continue, and their failure to vote to discontinue, the Plan and the Agreement, after the Trustees caused the Fund to close to new investors constituted, and continues to be, a breach by the Defendant Trustees of their fiduciary duty, under Massachusetts law, to the Fund and its shareholders.

69. The Plaintiff has not made demand upon the Trustees that the Trustees cause the Funds to bring this action against the Defendants, to recover the excessive Distribution Fees which the Defendants have charged, and continue to charge the Fund, and to enjoin the continued payment of the excessive Distribution Fees, because the making of such demand in this case would have been futile and hence is excused.

70. Demand upon the Trustees to bring this action on behalf of the Fund, against the Defendants, would have been futile because:

a. the claims asserted herein against the Defendants are based upon the excessiveness of Distribution Fees charged to the Fund by Distributors pursuant to the Rule 12b-1 Plan and the Agreement, which the Trustees have specifically: i) voted to approve; ii) voted to continue on at least two occasions since May 1, 2002, when they closed the Fund to new investors, and iii) repeatedly, at least four times each year since May 1, 2002, failed to terminate after review of the quarterly information provided to them regarding the payment of the Rule 12b-1 Distribution Fees pursuant to SEC Rule 12b-1(e).

b. pursuant to Rule 12b-1 and the express terms of the Rule 12b-1 Plan, the