United States District Court
District of Massachusetts

---

Eric R. Bahe, Custodian, CGM Roth
Conversion IRA,

                  Plaintiff,

      -against-

Franklin/Templeton Distributors,
Inc., Frank T. Crohn, Burton J.
Greenwald, Charles Rubens II,
Leonard Rubin, and William J.
Lippman,

               Defendants,
        -and-

Franklin Balance Sheet Investment
Fund,

         Nominal Defendant.

Civil Action No.
04-11195 MLW

---

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS
FRANKLIN/TEMPLETON DISTRIBUTORS, INC. AND
WILLIAM J. LIPPMAN TO DISMISS THE COMPLAINT**

**RULES 12b(6) AND 23.1**

## Preliminary Statement

Defendants Franklin/Templeton Distributors, Inc. ("Distributors") and trustee William J. Lippman move, pursuant to Rules 12(b)(6) and 23.1, Fed.R.Civ.P., for an Order dismissing the Complaint on the grounds that:  (1) the payments challenged under § 36(b) of the Investment Company Act (the "ICA") as excessive are governed by and expressly permitted under NASD Rule 2830, as amended by NASD Notice to Members 93-12; and (2) plaintiff, before prosecuting his two derivative common law claims, failed to make the requisite demand on the trustees to obtain the action he desires from them.

### The Complaint

The Complaint in this action seeks recovery of (allegedly) excessive 12b-1 fees paid by the Franklin Balance Sheet Investment Fund ("the Fund").  The Complaint asserts a single federal law claim under § 36(b) of the ICA, 15 U.S.C. § 80a-35(b), and two common law claims on behalf of the Fund.  The gravamen of the Complaint is that, because the Fund was closed to new investors, it was (allegedly) improper for the Fund to continue paying 12b-1 fees.  This is a misconceived notion that flies in the face of a carefully articulated statutory and regulatory scheme conceived by Congress and carried out by the SEC through the medium of the NASD.

1

Point I —

## The § 36(b) claim against Franklin/Templeton Distributors, Inc. (Count I) must be dismissed since the challenged payments are expressly permitted under the governing NASD Rule.

The payments at issue in this action — payments by an investment company (i.e. a mutual fund) to a distributor for distribution, sales and ongoing shareholder services — are commonly known as 12b-1 fees. Such payments are made only pursuant to a Plan of Distribution duly adopted and approved by the trustees and shareholders of an investment company. The Plan is kept under continuing review by the trustees, in accordance with SEC Rule 12b-1, promulgated pursuant to § 12(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-12(b).

The permissible charges of a distributor for selling investment company shares are strictly governed by NASD Rule 2830, entitled "Investment Company Securities."[1]  A copy of Rule 2830 is attached as Appendix A.

---

[1] All persons selling investment company shares must, by law, be members of a securities association registered with the Securities and Exchange Commission.  See § 15(b)(8) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b)(8).  Pursuant to § 22(b) of the ICA, 15 U.S.C. § 30a-22(b), the NASD is that securities association, and it regulates, for its members, the permissible charges in connection with the distribution of the shares of an investment company.  See NASD Rule 2830, the governing regulation issued by the NASD with the approval of the SEC.

Under Rule 2830, an investment company may pay <u>both</u> an "asset-based sales charge" and a "service fee" totaling 1% of the net asset value of a fund per annum (see Questions #23 and #24 of NASD Notice to Members 93-12) — the asset-based sales charge may not exceed .75 of 1% per annum of the average net assets of the investment company, and the service fee may not exceed .25 of 1% of average net assets per annum.  See Rule 2830(d)(2)(E) and (b) and NASD Notice to Members 93-12 (a copy of the Notice is attached as Appendix B).

Rule 2830 defines "sales charge" as "all charges or fees that are paid to finance sales or sales promotion expenses ..."  Rule 2830(b)(8).

Rule 2830 defines "asset-based sales charge" as "a sales charge that is deducted from the net assets of an investment company and does not include a service fee."  Rule 2830(b)(8)(A).

Rule 2830 defines "service fees" as "payments by an investment company for personal service and/or the maintenance of shareholder accounts."  Rule 2830(b)(9).

No claim is made (nor could it be made) that the Fund in this case was barred, while closed to new investors, from paying the

3

12b-1 fees paid here.  Rule 2830, as amended by Notice to Members 93-12, expressly permits such payments.  Thus, in Question #6 of that Notice to Members, the NASD posed the following question and gave its members the following answer:

> **"Question #6:**  If a fund generates no sales or discontinues selling its shares, must it stop paying any asset-based sales charges [i.e. 12b-1 fees]?
>
> **Answer:**  No." [remainder of Answer omitted as irrelevant to this issue]

Similarly, there is no cognizable legal basis for challenging the **quantum** of 12b-1 fees paid in this case because they, indisputably, were within the limits set by Rule 2830.  Plaintiff's claim is that the amount of the 12b-1 fees paid to Distributors is "excessive" (Cplt., paras. 1, 43, 45-47, 63, 67 and 70) because the amount is allegedly in excess of the expenses incurred primarily for sales of Fund shares during the time the Fund was closed to new investors (Cplt., paras. 43 and 45).  However, that claim is without merit since the Complaint acknowledges that the amount of the challenged fees (see Cplt. ¶ 42 for the size of the fees) does not exceed the aforementioned limitations of Rule 2830.

The Complaint (para. 42) states:

> "the Fund has been charged by, and has paid to, Distributors, pursuant to the Plan and the Agreement, a Distribution Fee (paid on an ongoing basis) equal to approximately 0.25% of the net asset value of the Fund's Class A

4

> shares, 1% of the net asset value of the Fund's
> Class B and C shares, and 0.5% of [the net
> asset value] the Fund's R shares per year."

Each amount is expressly permitted under NASD 2830 and thus
not subject to attack as excessive or without a reasonable basis.
The SEC, in approving Rule 2830, made clear that 12b-1 fees within
the limitation of Rule 2830 were <u>not</u> excessive.  Thus, in Release
No. 34-30897 (see Appendix C), the SEC stated:

> "Charges [i.e. 12b-1 charges] shall be deemed
> excessive if they do not conform to the
> provisions of Section 26(d) [now known as Rule
> 2830]."

By logical extension, then, if charges <u>do</u> conform to Rule 2830,
they are not excessive.  Indeed, the SEC, in Release No. 34-30897,
<u>explicitly</u> opined that the compensation permitted by NASD Rule 2830
is <u>not excessive</u> and is <u>reasonable</u>:

> <u>"The Commission is of the opinion that the
> proposed rule change</u> [NASD Rule 2830] <u>carries
> out the NASD's congressional mandate to prevent
> excessive sales charges on mutual fund shares.
> The Commission believes that the proposed rule
> change appropriately balances the need to
> ensure that the NASD's rules allow broker-
> dealers, sales personnel and underwriters to
> receive reasonable compensation, against the
> need to ensure that investors are charged
> reasonable sales loads</u>." (emphasis supplied)

In sum, NASD Rule 2830, as amended by NASD Notice to Members
93-12, makes abundantly clear that <u>the closure of a fund to new
investors is irrelevant to the right and propriety of the</u>

5

<u>distributor to continue charging and receiving 12b-1 fees in an</u>
<u>amount  calculated  pursuant  to  and  permitted  by  Rule  2830</u>.
Accordingly, the claim under § 36(b) of the ICA must be dismissed
for failing to state a legally cognizable cause of action.

\* \* \*

### The rationale for the 12b-1 fees when
### a fund is closed to new investors

Although not strictly germane to the legal issue which
controls the motion to dismiss the § 36(b) claim, we thought the
Court might wish to know the underlying rationale for permitting
distributors to continue collecting 12b-1 fees when a fund is
closed to new investors, lest the Court erroneously think defen-
dants are taking advantage of a "technicality".

The rationale is this:  the 12b-1 fees reimburse distributors
for payments advanced by them to brokers on sales made <u>prior</u> to the
closing of the fund to new investors; the 12b-1 fees also pay for
"trail commissions" to brokers on sales made by the brokers <u>prior</u>
to the closing of the fund to new investors.  In short, 12b-1 fees
are simply an alternative to front-end load charges as a mechanism
for paying for distribution of mutual fund shares.  12b-1 Plans
allow investors to "buy now, pay later", i.e. to deter paying their
distribution charges at the outset of their investment, whereas

6

investors who choose to purchase shares with front-end load charges "pay now, rather than later". It is all a matter of choice for the investors.[2]

In addition to the foregoing functions of 12b-1 fees, such fees may be (and here, were) used to finance ongoing distribution services and pay for other services to existing shareholders who continue to hold their shares and who may make additional investments even after a fund is closed to new investors. Such investments stabilize the fund and help preclude net redemptions from a fund when, for prudent investment reasons, the independent trustees determine that a fund should be closed to new investors.

Plaintiff mistakenly seems to think that the purpose of a Rule 12b-1 Plan is to support distribution costs to attract new investors (Cplt. ¶¶ 34 and 48) — Rule 12b-1 says no such thing and that is not the case. With this principle in mind, there is, in truth, nothing left to litigate as to the § 36(b) claim, and it should be dismissed for failure to state a legally cognizable claim.

---

[2] For further discussion of these functions of 12b-1 fees, see SEC Release No. 34-30897, SEC 1992 LEXIS 1631, at **3-8 (July 7, 1992). A copy is attached as Appendix C. Paragraph 51 of the Complaint reflects the Fund's account of this rationale.

**Point II —**

**The state law (Counts II and III)
derivative claims must be dismissed
for failure to comply with
the "demand" rule.**

It is undisputed that Massachusetts law requires a unit holder to make a demand on trustees before independently initiating derivative litigation on behalf of the fund. See, e.g. <u>Bartlett</u> v. <u>New York, New Haven & Hartford R.R.</u>, 221 Mass. 530, 109 N.E. 452 (1915); <u>Harhen</u> v. <u>Brown</u>, 431 Mass. 838, 730 N.E.2d 859 (2000).[3] The Complaint's contention that plaintiff was excused from the "demand" rule for such derivative claims rests on a false premise, namely that the Fund trustees' approval of and acquiescence in the allegedly excessive 12b-1 fees rendered the trustees "interested" for purposes of the "demand" rule (Cplt. ¶¶ 69-71).

Chapter 182, § 2B, of Mass. General Laws, by incorporating the definition of "interested person" in the ICA, 15 U.S.C. § 80a-2(a)(19), expressly rejects that premise. Section 2B states:

> "2B. Trustee Who is not an Interested Person With Respect to Trust is Deemed

---

[3] Massachusetts provides the controlling substantive law for determining whether a demand was required on the trustees since the Fund is organized under Massachusetts law. See <u>Kamen</u> v. <u>Kemper Financial Services, Inc.</u>, 500 U.S. 90, 96-99 (1991). Rule 23.1, Fed.R.Civ.P., requires that the Complaint state the facts showing that substantive justification <u>with particularity</u>. <u>Gonzalez Turul</u> v. <u>Rogatol Distribs., Inc.</u>, 951 F.2d 1, 2-3 (1st Cir. 1991) (this Circuit vigorously enforces requirement that explanation of "futility" be pleaded with particularity).

Independent and Disinterested; Investment
Company Act of 1940.

This section shall apply to a trust that
is an investment company, as defied in the
Investment Company Act of 1940 and that is
registered thereunder with the United States
Securities and Exchange Commission.

A trustee of a trust who with respect to
the trust is not an interested person, <u>as
defined in said Investment Company Act of 1940
[i.e. § 2(a)(19)]</u>, shall be deemed to be
independent and disinterested when making any
determination or taking any action as a
trustee."(emphasis supplied)

The definition of "interested person" in § 2(a)(19) of the ICA
does not deem a trustee of a mutual fund an "interested party" for
merely approving or failing to terminate contested 12b-1 fees as
alleged by plaintiff (Cplt., ¶¶ 53-56, 70) (a copy of § 2(a)(19) of
the ICA is attached as Appendix D).  See also:  <u>Migdal</u> v. <u>Rowe
Price-Fleming International, Inc</u>., 248 F.3d 321, 329-31 (4th Cir.
2001); <u>Verkouteren</u> v. <u>Blackrock Fin. Mgt</u>., 37 F.Supp.2d 256, 258-61
(S.D.N.Y. 1999), aff'd, 208 F.3d 204 (2d Cir. 2000).  Accordingly,
the Court should dismiss Counts II and III for plaintiff's failure
either to make "demand" or provide a legally sufficient excuse for
not making demand.

Plaintiff's proffered excuse also fails to satisfy the more
general principles for the "demand" rule in derivative litigation.
See, e.g. <u>Harhen</u> <u>supra</u>, 431 Mass. at 842-43, n.5, where the Supreme

9

Judicial Court of Massachusetts adopted a definition of "interested" director under which a director is not deemed "interested" in a derivative action with respect to a complaint naming him as a defendant if the complaint is based only on the fact that the director approved or acquiesced in the transaction or conduct that is the subject of the action. See also: Demoulas v. Demoulas Super Markets, Inc., 16 Mass.L.Rep. 701, 2003 Mass. Super. LEXIS 272, at **22-23 (September 23, 2003).[4]

Accordingly, the Complaint fails to allege any facts, not to mention facts with the requisite particularity, which would excuse plaintiff from the "demand" rule.[5] It follows that the common law derivative claims in Counts II (against Distributors) and III (as to Defendant Lippman) should be dismissed.

---

[4] That guideline [in Harhen for determining whether a trustee is "interested"] echoes this Court's rulings in Grossman v. Johnson, 89 F.R.D. 656, 660 (D.Mass. 1981), aff'd, 674 F.2d 115, 124 (1st Cir.), cert. den., 459 U.S. 838 (1982), and Untermeyer v. Fidelity Daily Income Trust, 79 F.R.D. 36, 43 (D.Mass.), v.o.g., 580 F.2d 22 (1978), that a director's approval of or acquiesence in an allegedly improper transaction between the fund and another entity does not excuse a plaintiff from the "demand" requirement contemplated by Rule 23.1, Fed.R.Civ.P.

[5] Dismissal of Counts II and III for plaintiff's failure to comply with the "demand" rule would also be consistent with the strict "demand" rule provision of the Business Corporations Law, Chap. 156D, Article 7, § 7.42 (2004) which recently became effective.

10

## Point III —

## All claims should be dismissed as against William J. Lippman since there is no personal jurisdiction over him nor is there proper venue in this Court.

To avoid duplication, we rest on the papers submitted by Goodwin Procter LLP on behalf of their clients on the issues of personal jurisdiction and venue, but with the addition by us of an Affidavit by Mr. Lippman, the sole "interested" trustee.

## Conclusion

For the foregoing reasons, the Court should grant the motion of Defendants Franklin/Templeton Distributors, Inc. and William J. Lippman to dismiss the Complaint pursuant to Rules 12(b)(6) and 23.1, Fed.R.Civ.P.

Dated:   August 27, 2004

Daniel A. Pollack
Edward T. McDermott
Anthony Zaccaria
Pollack & Kaminsky
114 West 47th Street
New York, New York 10036
Tel. (212) 575-4700
Fax  (212) 575-6560

*Attorneys for Defendants*
*Franklin/Templeton Distributors,*
*Inc. and William J. Lippman*

11