AGREEMENT AND DECLARATION OF TRUST

of

FRANKLIN BALANCE SHEET INVESTMENT FUND

a Massachusetts Business Trust

Dated: September 11, 1989

90741/22

# TABLE OF CONTENTS

## FRANKLIN BALANCE SHEET INVESTMENT FUND

## AGREEMENT AND DECLARATION OF TRUST

|  |  | Page No. |
|---|---|---|
| ARTICLE I | Name and Definitions | 1 |
| 1. | Name | 1 |
| 2. | Definitions | 1 |
| (a) | Trust | 1 |
| (b) | Trust Property | 1 |
| (c) | Trustees | 1 |
| (d) | Shares | 2 |
| (e) | Shareholder | 2 |
| (f) | Person | 2 |
| (g) | 1940 Act | 2 |
| (h) | Commission and Principal Underwriter | 2 |
| (i) | Declaration of Trust | 2 |
| (j) | By-Laws | 2 |
| (k) | Interested Person | 2 |
| (l) | Investment Manager | 2 |
| (m) | Series Company | 2 |
| (n) | Series | 2 |
| ARTICLE II | Purpose of Trust | 2 |
| ARTICLE III | Shares | 3 |
| 1. | Division of Beneficial Interest | 3 |
| 2. | Ownership of Shares | 3 |
| 3. | Investments in the Trust | 4 |
| 4. | Status of Shares and Limitation of Personal Liability | 4 |
| 5. | Power of Board of Trustees to Change Provisions Relating to Shares | 4 |
| 6. | Establishment and Designation of Series | 5 |
| (a) | Assets Belonging to Series | 5 |
| (b) | Liabilities Belonging to Series | 6 |
| (c) | Dividends, Distributions, Redemptions, and Repurchases | 6 |
| (d) | Voting | 6 |
| (e) | Equality | 6 |
| (f) | Fractions | 6 |
| (g) | Exchange Privilege | 6 |
| (h) | Combination of Series | 7 |
| (i) | Elimination of Series | 7 |
| 7. | Indemnification of Shareholders | 7 |

- i -

Page No.

ARTICLE IV    The Trustees.............................    7

  1.   Number, Election and Tenure.....................    7
  2.   Effect of Death, Resignation, etc.
         of a Trustee..................................    8
  3.   Powers.........................................    8
  4.   Payment of Expenses by the Trust...............   11
  5.   Payment of Expenses by Sharenolders............   11
  6.   Ownership of Assets of the Trust...............   11
  7.   Service Contracts..............................   12

ARTICLE V     Shareholders' Voting Powers and Meetings...   13

  1.   Voting Powers..................................   13
  2.   Voting Power and Meetings......................   14
  3.   Quorum and Required Vote.......................   14
  4.   Action by Written Consent......................   15
  5.   Record Dates...................................   15
  6.   Additional Provisions..........................   15

ARTICLE VI    Net Asset Value, Distributions,
                and Redemptions.......................   16

  1.   Determination of Net Asset Value, Net
         Income and Distributions.....................   16
  2.   Redemptions and Repurchases....................   16
  3.   Redemptions at the Option of the Trust.........   16

ARTICLE VII   Compensation and Limitation of
                Liability of Trustees.................   17

  1.   Compensation...................................   17
  2.   Limitation of Liability........................   17
  3.   Indemnification................................   17

ARTICLE VIII  Miscellaneous...........................   18

  1.   Trustees, Shareholders, etc.
         Not Personally Liable; Notice................   18
  2.   Trustee's Good Faith Action, Expert
         Advice, No Bond or Surety....................   19
  3.   Liability of Third Persons Dealing
         with Trustees................................   19
  4.   Termination of Trust or Series.................   19
  5.   Merger and Consolidation.......................   19
  6.   Filing of Copies, References, Headings.........   19
  7.   Applicable Law.................................   20
  8.   Provisions in Conflict with Law or Regulations...   20
  9.   Amendments.....................................   20
 10.   Trust Only.....................................   20
 11.   Use of the Name "Franklin".....................   21

- ii -

## AGREEMENT AND DECLARATION OF TRUST

### OF

## FRANKLIN BALANCE SHEET INVESTMENT FUND

THIS AGREEMENT AND DECLARATION OF TRUST is made and entered into as of this 11th day of September 1989 by the Trustees named hereunder.

WHEREAS the Trustees desire and have agreed to manage all property coming into their hands as trustees of a Massachusetts business trust in accordance with the provisions hereinafter set forth,

NOW, THEREFORE, the Trustees hereby direct that this Agreement and Declaration of Trust be filed with the Secretary of The Commonwealth of Massachusetts and do hereby declare that they will hold all cash, securities and other assets, which they may from time to time acquire in any manner as Trustees hereunder, IN TRUST, and manage and dispose of the same upon the following terms and conditions for the pro rata benefit of the holders of Shares in this Trust.

### ARTICLE I

### Name and Definitions

**Section 1.  Name.**  This Trust shall be known as the FRANKLIN BALANCE SHEET INVESTMENT FUND and the Trustees shall conduct the business of the Trust under that name or any other name as they may from time to time determine.

**Section 2.  Definitions.**  Whenever used herein, unless otherwise required by the context or specifically provided:

(a)  The "Trust" refers to the Massachusetts business trust established by this Agreement and Declaration of Trust, as amended from time to time;

(b)  The "Trust Property" means any and all property, real or personal, tangible or intangible, which is owned or held by or for the account of the Trust or the Trustees.

(c)  "Trustees" refers to the persons who have signed this Agreement and Declaration of Trust, so long as they continue in office in accordance with the terms hereof, and all other persons who may from time to time be duly elected or appointed to serve on the Board of Trustees in accordance with the provisions hereof, and reference herein to a Trustee or the Trustees shall

refer to such person or persons in their capacity as trustees hereunder;

(d)  "Shares" means the shares of beneficial interest into which the beneficial interest in the Trust shall be divided from time to time and includes fractions of Shares as well as whole Shares;

(e)  "Shareholder" means a record owner of outstanding Shares;

(f)  "Person" means and includes individuals, corporations, partnerships, trusts, associations, joint ventures and other entities, whether or not legal entities, and governments and agencies and political subdivisions thereof, whether domestic or foreign;

(g)  The "1940 Act" refers to the Investment Company Act of 1940 and the Rules and Regulations thereunder, all as amended from time to time;

(h)  The terms "Commission" and "Principal Underwriter" shall have the meanings given them in the 1940 Act;

(i)  "Declaration of Trust" shall mean this Agreement and Declaration of Trust, as amended or restated from time to time;

(j)  "By-Laws" shall mean the By-Laws of the Trust as amended from time to time;

(k)  The term "Interested Person" has the meaning given it in Section 2(a)(19) of the 1940 Act.

(l)  "Investment Manager" means a party furnishing services to the Trust pursuant to any contract described in Article IV, Section 7(a) hereof.

(m)  "Series Company" refers to the form of registered open-end investment company described in Section 18(f)(2) of the 1940 Act or in any successor statutory provision; and

(n)  "Series" refers to each Series of Shares established and designated under or in accordance with the provisions of Article III.


### ARTICLE II

#### Purpose of Trust

The purpose of the Trust is to conduct, operate and carry on the business of a managed investment company registered under the

1940 Act through one or more portfolios invested primarily in securities.

## ARTICLE III

### Shares

**Section 1. Division of Beneficial Interest.** The beneficial interest in the Trust shall at all times be divided into an unlimited number of Shares, with a par value of $ .01 per Share. The Trustees may authorize the division of Shares into separate Series, and the different Series shall be established and designated, and the variations in the relative rights and preferences as between the different Series shall be fixed and determined by the Trustees. If no Series shall be established, the Shares shall have the rights and preferences provided for herein or in Article III, Section 6 hereof to the extent relevant and not otherwise provided for herein.

Subject to the provisions of Section 6 of this Article III, each Share shall have voting rights as provided in Article V hereof, and holders of the Shares of any Series shall be entitled to receive dividends, when and as declared with respect thereto in the manner provided in Article VI, Section 1 hereof. No Shares shall have any priority or preference over any other Share of the same Series with respect to dividends or distributions upon termination of the Trust or of such Series made pursuant to Article VIII, Section 4 hereof. All dividends and distributions shall be made ratably among all Shareholders of a particular Series from the assets belonging to such Series according to the number of Shares of such Series held of record by such Shareholder on the record date for any dividend or distribution or on the date of termination, as the case may be. Shareholders shall have no preemptive or other right to subscribe to any additional Shares or other securities issued by the Trust or any Series. The Trustees may from time to time divide or combine the Shares of any particular Series into a greater or lesser number of Shares of that Series without thereby changing the proportionate beneficial interest of the Shares of that Series in the assets belonging to that Series or in any way affecting the rights of Shares of any other Series.

**Section 2. Ownership of Shares.** The ownership of Shares shall be recorded on the books of the Trust or a transfer or similar agent for the Trust, which books shall be maintained separately for the Shares of each Series. No certificates certifying the ownership of Shares shall be issued except as the Board of Trustees may otherwise determine from time to time. The Trustees may make such rules as they consider appropriate for the transfer of Shares of each Series and similar matters. The record books of the Trust as kept by the Trust or any transfer or similar agent, as the case may be, shall be conclusive as to who

0074Y                                    -3-

are the Shareholders of each Series and as to the number of Shares of each Series held from time to time by each.

Section 3.  Investments in the Trust.  The Trustees may accept investments in the Trust from such Persons, at such times, on such terms, and for such consideration as they from time to time authorize.

Section 4.  Status of Shares and Limitation of Personal Liability.  Shares shall be deemed to be personal property giving only the rights provided in this instrument.  Every Shareholder by virtue of having become a Shareholder shall be held to have expressly assented and agreed to the terms hereof and to have become a party hereto.  The death of a Shareholder during the existence of the Trust shall not operate to terminate the Trust, nor entitle the representative of any deceased Shareholder to an accounting or to take any action in court or elsewhere against the Trust or the Trustees, but entitles such representative only to the rights of said deceased Shareholder under this Trust.  Ownership of Shares shall not entitle the Shareholder to any title in or to the whole or any part of the Trust Property or right to call for a partition or division of the same or for an accounting, nor shall the ownership of Shares constitute the Shareholders as partners.  Neither the Trust nor the Trustees, nor any officer, employee or agent of the Trust shall have any power to bind personally any Shareholders, nor, except as specifically provided herein, to call upon any Shareholder for the payment of any sum of money or assessment whatsoever other than such as the Shareholder may at any time personally agree to pay.

Section 5.  Power of Board of Trustees to Change Provisions Relating to Shares.  Notwithstanding any other provision of this Declaration of Trust and without limiting the power of the Board of Trustees to amend the Declaration of Trust as provided elsewhere herein, the Board of Trustees shall have the power to amend this Declaration of Trust, at any time and from time to time, in such manner as the Board of Trustees may determine in their sole discretion, without the need for Shareholder action, so as to add to, delete, replace or otherwise modify any provisions relating to the Shares contained in this Declaration of Trust, provided that before adopting any such amendment without Shareholder approval the Board of Trustees shall determine that it is consistent with the fair and equitable treatment of all Shareholders or that Shareholder approval is not otherwise required by the 1940 Act or other applicable law.

Without limiting the generality of the foregoing, the Board of Trustees may, for the above-stated purposes, amend the Declaration of Trust to amend any of the provisions set forth in paragraphs (a) through (i) of Section 6 of this Article III.

0074Y

**Section 6.  Establishment and Designation of Series.**  The establishment and designation of any Series of Shares shall be effective upon the resolution by a majority of the then Trustees, setting forth such establishment and designation and the relative rights and preferences of such Series, or as otherwise provided in such resolution.

Shares of each Series established pursuant to this Section 6, unless otherwise provided in the resolution establishing such Series, shall have the following relative rights and preferences:

(a)  Assets Belonging to Series.  All consideration received by the Trust for the issue or sale of Shares of a particular Series, together with all assets in which such consideration is invested or reinvested, all income, earnings, profits, and proceeds thereof from whatever source derived, including, without limitation, any proceeds derived from the sale, exchange or liquidation of such assets, and any funds or payments derived from any reinvestment of such proceeds in whatever form the same may be, shall irrevocably belong to that Series for all purposes, subject only to the rights of creditors, and shall be so recorded upon the books of account of the Trust.  Such consideration, assets, income, earnings, profits and proceeds thereof, from whatever source derived, including, without limitation, any proceeds derived from the sale, exchange or liquidation of such assets, and any funds or payments derived from any reinvestment of such proceeds, in whatever form the same may be, are herein referred to as "assets belonging to" that Series.  In the event that there are any assets, income, earnings, profits and proceeds thereof, funds or payments which are not readily identifiable as belonging to any particular Series (collectively "General Assets"), the Trustees shall allocate such General Assets to, between or among any one or more of the Series in such manner and on such basis as they, in their sole discretion, deem fair and equitable, and any General Asset so allocated to a particular Series shall belong to that Series.  Each such allocation by the Trustees shall be conclusive and binding upon the Shareholders of all Series for all purposes.

(b)  Liabilities Belonging to Series.  The assets belonging to each particular Series shall be charged with the liabilities of the Trust in respect to that Series and all expenses, costs, charges and reserves attributable to that Series, and any general liabilities of the Trust which are not readily identifiable as belonging to any particular Series shall be allocated and charged by the Trustees to and among any one or more of the Series in such manner and on such basis as the Trustees in their sole discretion deem fair and equitable.  The liabilities, expenses, costs, charges, and reserves so charged to a Series are herein referred to as "liabilities belonging to" that Series.  Each allocation of liabilities, expenses, costs, charges and reserves by the Trustees shall be conclusive and binding upon the holders of all Series for all purposes.  Under no circumstances shall the

assets allocated or belonging to any particular Series be charged
with liabilities attributable to any other Series.  All Persons
who have extended credit which has been allocated to a particular
Series, or who have a claim or contract which has been allocated
to any particular Series, shall look only to the assets of that
particular Series for payment of such credit, claim, or contract.

(c)  Dividends, Distributions, Redemptions, and
Repurchases.  Notwithstanding any other provisions of this
Declaration of Trust, including, without limitation, Article VI,
no dividend or distribution (including, without limitation, any
distribution paid upon termination of the Trust or of any Series)
with respect to, nor any redemption or repurchase of, the Shares
of any Series shall be effected by the Trust other than from the
assets belonging to such Series, nor, except as specifically
provided in Section 7 of this Article III, shall any Shareholder
of any particular Series otherwise have any right or claim
against the assets belonging to any other Series except to the
extent that such Shareholder has such a right or claim hereunder
as a Shareholder of such other Series.  The Trustees shall have
full discretion, to the extent not inconsistent with the 1940
Act, to determine which items shall be treated as income and
which items as capital; and each such determination and
allocation shall be conclusive and binding upon the Shareholders.

(d)  Voting.  All Shares of the Trust entitled to vote on a
matter shall vote separately by Series.  That is, the
Shareholders of each Series shall have the right to approve or
disapprove matters affecting the Trust and each respective Series
as if the Series were separate companies.  There are, however,
two exceptions to voting by separate Series.  First, if the 1940
Act requires all Shares of the Trust to be voted in the aggregate
without differentiation between the separate Series, then all the
Trust's Shares shall be entitled to vote on a one-vote-per-Share
basis.  Second, if any matter affects only the interests of some
but not all Series, then only the Shareholders of such affected
Series shall be entitled to vote on the matter.

(e)  Equality.  All the Shares of each particular Series
shall represent an equal proportionate interest in the assets
belonging to that Series (subject to the liabilities belonging to
that Series), and each Share of any particular Series shall be
equal to each other Share of that Series.

(f)  Fractions.  Any fractional Share of a Series shall
carry proportionately all the rights and obligations of a whole
share of that Series, including rights with respect to voting,
receipt of dividends and distributions, redemption of Shares and
termination of the Trust.

(g)  Exchange Privilege.  The Trustees shall have the
authority to provide that the holders of Shares of any Series
shall have the right to exchange said Shares for Shares of one or

more other Series of Shares in accordance with such requirements
and procedures as may be established by the Trustees.

(h) **Combination of Series.** The Trustees shall have the
authority, without the approval of the Shareholders of any Series
unless otherwise required by applicable law, to combine the
assets and liabilities belonging to any two or more Series into
assets and liabilities belonging to a single Series.

(i) **Elimination of Series.** At any time that there are no
Shares outstanding of any particular Series previously
established and designated, the Trustees may by resolution of a
majority of the then Trustees abolish that Series and rescind the
establishment and designation thereof.

**Section 7. Indemnification of Shareholders.** In case any
Shareholder or former Shareholder shall be held to be personally
liable solely by reason of his or her being or having been a
Shareholder and not because of his or her acts or omissions or
for some other reason, the Shareholder or former Shareholder (or
his or her heirs, executors, administrators, or other legal
representatives or in the case of a corporation or other entity,
its corporate or other general successor) shall be entitled out
of the assets of the Trust to be held harmless from and
indemnified against all loss and expense arising from such
liability.

## ARTICLE IV

### The Board of Trustees

**Section 1. Number, Election and Tenure.** The number of
Trustees constituting the Board of Trustees shall be fixed from
time to time by a written instrument signed or by resolution
approved at a duly constituted meeting by a majority of the Board
of Trustees, provided, however, that the number of Trustees shall
in no event be less than one nor more than 15. The Board of
Trustees, by action of a majority of the then Trustees at a duly
constituted meeting, may fill vacancies in the Board of Trustees
or remove Trustees with or without cause. Each Trustee shall
serve during the continued lifetime of the Trust until he dies,
resigns, is declared bankrupt or incompetent by a court of
appropriate jurisdiction, or is removed, or, if sooner, until the
next meeting of Shareholders called for the purpose of electing
Trustees and until the election and qualification of his
successor. Any Trustee may resign at any time by written
instrument signed by him and delivered to any officer of the
Trust or to a meeting of the Trustees. Such resignation shall be
effective upon receipt unless specified to be effective at some
other time. Except to the extent expressly provided in a written
agreement with the Trust, no Trustee resigning and no Trustee
removed shall have any right to any compensation for any period

following his resignation or removal, or any right to damages on account of such removal. The Shareholders may fix the number of Trustees and elect Trustees at any meeting of Shareholders called by the Trustees for that purpose.

Section 2. Effect of Death, Resignation, etc. of a Trustee. The death, declination, resignation, retirement, removal, or incapacity of one or more Trustees, or all of them, shall not operate to annul the Trust or to revoke any existing agency created pursuant to the terms of this Declaration of Trust. Whenever a vacancy in the Board of Trustees shall occur, until such vacancy is filled as provided in Article IV, Section 1, the Trustees in office, regardless of their number, shall have all the powers granted to the Trustees and shall discharge all the duties imposed upon the Trustees by this Declaration of Trust. As conclusive evidence of such vacancy, a written instrument certifying the existence of such vacancy may be executed by an officer of the Trust or by a majority of the Board of Trustees. In the event of the death, declination, resignation, retirement, removal, or incapacity of all the then Trustees within a short period of time and without the opportunity for at least one Trustee being able to appoint additional Trustees to fill vacancies, the Trust's investment adviser or investment advisers jointly, if there is more than one, are empowered to appoint new Trustees subject to the provisions of Section 16(a) of the 1940 Act.

Section 3. Powers. Subject to the provisions of this Declaration of Trust, the business of the Trust shall be managed by the Board of Trustees, and such Board shall have all powers necessary or convenient to carry out that responsibility including the power to engage in securities transactions of all kinds on behalf of the Trust. Without limiting the foregoing, the Trustees may: adopt By-Laws not inconsistent with this Declaration of Trust providing for the regulation and management of the affairs of the Trust and may amend and repeal them to the extent that such By-Laws do not reserve that right to the Shareholders; fill vacancies in or remove from their number, and may elect and remove such officers and appoint and terminate such agents as they consider appropriate; appoint from their own number and establish and terminate one or more committees consisting of two or more Trustees which may exercise the powers and authority of the Board of Trustees to the extent that the Trustees determine; employ one or more custodians of the assets of the Trust and may authorize such custodians to employ subcustodians and to deposit all or any part of such assets in a system or systems for the central handling of securities or with a Federal Reserve Bank, retain a transfer agent or a shareholder servicing agent, or both; provide for the issuance and distribution of Shares by the Trust directly or through one or more Principal Underwriters or otherwise; redeem, repurchase and transfer Shares pursuant to applicable law; set record dates for the determination of Shareholders with respect to various

matters; declare and pay dividends and distributions to
Shareholders of each Series from the assets of such Series; and
in general delegate such authority as they consider desirable to
any officer of the Trust, to any committee of the Trustees and to
any agent or employee of the Trust or to any such custodian,
transfer or shareholder servicing agent, or Principal
Underwriter.  Any determination as to what is in the interests of
the Trust made by the Trustees in good faith shall be
conclusive.  In construing the provisions of this Declaration of
Trust, the presumption shall be in favor of a grant of power to
the Trustees.

Without limiting the foregoing, the Board of Trustees shall
have power and authority:

(a)  To invest and reinvest cash, to hold cash uninvested,
and to subscribe for, invest in, reinvest in, purchase or
otherwise acquire, own, hold, pledge, sell, assign, transfer,
exchange, distribute, write options on, lend or otherwise deal in
or dispose of contracts for the future acquisition or delivery of
fixed income or other securities, and securities of every nature
and kind, including, without-limitation, all types of bonds,
debentures, stocks, negotiable or non-negotiable instruments,
obligations, evidences of indebtedness, certificates of deposit
or indebtedness, commercial paper, repurchase agreements,
bankers' acceptances, and other securities of any kind, issued,
created, guaranteed, or sponsored by any and all Persons,
including, without limitation, states, territories, and
possessions of the United States and the District of Columbia and
any political subdivision, agency, or instrumentality thereof,
any foreign government or any political subdivision of the U.S.
Government or any foreign government, or any international
instrumentality, or by any bank or savings institution, or by any
corporation or organization organized under the laws of the
United States or of any state, territory, or possession thereof,
or by any corporation or organization organized under any foreign
law, or in "when issued" contracts for any such securities, to
change the investments of the assets of the Trust; and to
exercise any and all rights, powers, and privileges of ownership
or interest in respect of any and all such investments of every
kind and description, including, without limitation, the right to
consent and otherwise act with respect thereto, with power to
designate one or more Persons, to exercise any of said rights,
powers, and privileges in respect of any of said instruments;

(b)  To sell, exchange, lend, pledge, mortgage, hypothecate,
lease, or write options with respect to or otherwise deal in any
property rights relating to any or all of the assets of the Trust;

(c)  To vote or give assent, or exercise any rights of
ownership, with respect to stock or other securities or property;
and to execute and deliver proxies or powers of attorney to such
person or persons as the Trustees shall deem proper, granting to

0074Y                               -9-