UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

Eric R. Bahe, Custodian, CGM Roth  )
Conversion IRA,  )
  )
                Plaintiff,  )
  )   Civil Action No.
       -against-  )   04-11195 (MLW)
  )
Franklin/Templeton Distributors, Inc.,  )
Frank T. Crohn, Burton J. Greenwald,  )
Charles Rubens II, Leonard Rubin And  )
William J. Lippman,  )
  )
                Defendants,  )
       -and-  )
  )
Franklin Balance Sheet Investment Fund,  )
  )
                Nominal Defendant.  )
  )

---

## REPLY MEMORANDUM OF DEFENDANTS FRANKLIN/TEMPLETON DISTRIBUTORS, INC. AND WILLIAM J. LIPPMAN

Daniel A. Pollack
Edward T. McDermott
Anthony Zaccaria
POLLACK & KAMINSKY
114 West 47th Street
New York, NY 10036
Tel. (212) 575-4700
Fax  (212) 575-6560

*Attorneys for Defendants
  Franklin/Templeton Distributors,
  Inc. and William J. Lippman*

## NASD Rule 2830, as amended, is preclusive and, in this action, requires dismissal of the § 36(b) claim (Count I)

Plaintiff's Memorandum of Law in Opposition both ignores the controlling law and concedes points which, under the controlling law, require dismissal of the § 36(b) claim (the sole federal claim) in this action.

As to that claim, Plaintiff ignores § 22(b)(3) of the Investment Company Act ("the ICA"), the Congressional mandate which grants NASD Rule 2830 primacy over § 36(b) of the ICA. Plaintiff concedes that Franklin Distributors is in compliance with Rule 2830, which sets the limits with respect to the 12b-1 fees which are contested in this action, but it is his position that Franklin Distributors' receipt of those fees, while in compliance with Rule 2830, somehow violated § 36(b). Accordingly, he seeks to set up a "conflict" between Rule 2830 and § 36(b). Under § 22(b)(3), however, if there is a conflict, Rule 2830 has absolute primacy. Plaintiff's sole cited authority to the contrary, Bjurman, Barry, did not discuss or consider § 22(b)(3) and its impact on the relationship between Rule 2830 and § 36(b).[1]

1. **§ 22(b)(1) and (3) of the Investment Company Act — the legal underpinning of the primacy of Rule 2830:**

    a.   In **§ 22(b)(1)** of the ICA, Congress authorized a securities association registered with the SEC under the Securities Exchange Act (here, the NASD) to prescribe rules in order that mutual fund shares may be sold to the public allowing for "reasonable compensation for sales personnel, broker-dealers and, underwriters, and for reasonable sales loads to investors." See Supplemental Addendum E.[2]

---

[1] Pursuant to a recent Stipulation, certain issues raised by Defendants' Motions to Dismiss — i.e. whether this Court had personal jurisdiction over the individual defendants, whether this Court was a proper venue for this action and whether the "demand" requirement for derivative actions was satisfied — have been resolved without the need for any ruling by this Court. The sole focus of the Motion to Dismiss is now the § 36(b) claim (Count I).

[2] Supplemental Addenda E - L are contained in the accompanying Supplemental Addendum Volume.

2

b.  **§ 22(b)(3)** of the Act makes the provisions of § 22(b)(1) <u>supreme</u> if in conflict with any provision of any law of the United States in effect on the date § 22(b) took effect. Thus, the statute provides:

> "If any provision of this subsection is in conflict with any provision of any law of the United States in effect on December 14, 1970, the provisions of this subsection shall prevail." [3]

See Supplemental Addendum E.

c.  The NASD has repeatedly affirmed § 22(b) of the ICA as the well-spring of its authority to regulate sales charges by distributors of mutual fund shares, and that position has been explicitly endorsed by the SEC. Thus:

(i)  in 1975, in adopting a rule change (to the Rules of Fair Practice) regulating sales charges on the sale of mutual fund shares by distributors, the NASD, <u>with the explicit endorsement of the SEC</u>, stated:

> "The authority for the proposed amendments is contained in Section 22(b) of the Investment Company Act of 1940 ..."

See Supplemental Addendum F.

(ii)  in 1991, in writing to the SEC on a further rule change which added asset-based sales charges (12b-1 fees) to the types of sales charges covered by the 1975 regulation, the NASD again stated:

---

[3] Section 36(b) was in effect on December 14, 1970.

3

> "Furthermore, the Association [NASD] is clearly empowered under Section 15A(b)(6) of the 1934 Act and Section 22(b) of the 1940 Act to enact these limitations."

See Supplemental Addendum G.

(iii)    in 1992, the SEC, in approving the promulgation by the NASD of NASD Rule 2830 (then known as Section 26 of the Rules of Fair Practice), again made explicit reference to § 22(b):

> "Section 22(b) provides that the NASD shall adopt rules which ... shall allow for reasonable compensation for sales personnel, brokers-dealers, and underwriters, and for reasonable sales loads to investors."

See Addendum C.

(iv)    in 1993, the NASD, exercising its power under § 22(b), further amended Rule 2830 by filing Notice to Members 93-12[4], making it explicitly clear that asset-based sales charges could continue to be collected even when a fund generated <u>no</u> sales or discontinued selling its shares.

Thus, the NASD, in Question and Answer #6, stated:

> **Question #6**:  If a fund generates no sales or discontinues selling its shares, must it stop paying any asset-based sales charges?
>
> **Answer**:  No." [remainder of Answer elided as not pertinent to the issues in this case]

See Addendum B.[5]

---

[4] That Notice to Members 93-12 actually amended Rule 2830 as a matter of law (and did not merely construe it) is clear from the terms of the SEC release on that Notice (Supplemental Addendum H) as well as <u>General Bond & Share Co</u>. v. <u>SEC</u>, 39 F.3d 1451, 1457-58 (10th Cir. 1994) and SEC Rule 19b-4 discussed therein.

[5] In 1993, the SEC confirmed that Rule 2830 was consistent with Rule 12b-1, stating:

4

   d.  Accordingly, if and to the extent a different result could be reached under § 36(b), from the result reached under Rule 2830 as to the propriety of charging 12b-1 fees to funds closed to new investors, Rule 2830, as amended by Notice to Members 93-12, controls. In short, because of § 22(b)(3), Rule 2830, as amended by Notice to Members 93-12, trumps § 36(b).[6]

---

> "Rule 12b-1 permits a fund to spread its distribution expenses over several years and allows payment of fees for past distribution services. Therefore, even if a fund closes to new investors, it may continue to pay rule 12b-1 fees in order to compensate the distributor for its past distribution efforts." Memorandum, "Chairman Dingell's Inquiry Concerning Rule 12b-1 Fees," Deputy Director, SEC Div. of Inv. Mgmt., dated August 16, 1993, at 2-3.

See Supplemental Addendum I.

Moreover, in SEC Release No. IC-26356 (February 24, 2004), the SEC recently stated that NASD Rule 2830, not SEC Rule 12b-1, governs the permissible quantum of a distribution fee:

> "<u>Rule 12b-1 does not itself limit the amount of distribution costs that a fund can assume</u>, nor does it explicitly address the extent to which fund brokerage can be used to reward brokers for promoting the sale of fund shares. <u>Two NASD rules address these matters</u>.
>
> First, NASD Conduct <u>Rule 2830(d)</u> prohibits NASD members (i.e. broker-dealers) from selling shares of funds that impose excessive sales charges. <u>The rule deems a sales charge to be excessive if it exceeds the rule's caps</u>. A fund's sales load (whether charged at the time of purchase or redemption) may not exceed 8.5 percent of the offering price if the fund does not charge a rule 12b-1 fee. The aggregate sales charges of a fund which a rule 12b-1 fee may not exceed 7.25 percent of the amount invested, and <u>the amount of the asset-based sales charge (the rule 12b-1 fee) may not exceed 0.75 percent per year of the fund's average annual net assets</u>. Under the cap, therefore, an increase in the fund's sales load could reduce the permissible level of payments a selling broker may receive in the form of 12b-1 fees. The NASD designed the rule so that cumulative charges for sales-related expenses, no matter how they are imposed, are subject to equivalent limitations." (emphasis supplied)
>
>               See Supplemental Addendum J.

These statements of the SEC clearly reject plaintiff's suggestion that the charging and payment of distribution fees for past distribution efforts while a fund is closed to new investors violates Rule 12b-1 (Memorandum in Opposition, p.28).

[6] The Senate and House Reports on the 1970 amendments to the ICA support this conclusion. Both the Senate and House Reports contain this identical language on how § 22(b) prevails over all conflicting provisions of federal law:

> "<u>The provisions of this proposed section [i.e. § 22(b)] shall prevail over any conflicting provision of Federal law</u>. This provision, which is identical to section 15A(n) of the Securities Exchange Act, is designed to make it clear that

## 2. Plaintiff's concessions on Franklin Distributors' compliance with Rule 2830

a. Plaintiff concedes that Distributors complied with Rule 2830, as amended, stating (Memorandum in Opposition, pp. 26 and 28):

> (1) *"The Rule 12b-1 distribution fees which the Fund pays the Defendant each year are between .25% and 1.0% of the assets of the Fund" --- i.e. not more than the amount permitted by Rule 2830;*
>
> (2) *"No claim is made in this case that the Defendant Distributors is violating NASD Rule 2830"* [7]*; and*
>
> (3) *"... the Rule 12b-1 distribution fees paid to the Defendant here does [sic] not exceed the maximum allowed by NASD Rule 2830...."* [8]

With these concessions, plaintiff highlights his extreme position that a 12b-1 fee, though in compliance with Rule 2830, is recoverable by the Fund if that fee is found to be excessive under § 36(b). However, for the reasons detailed in the preceding section, Congress mandated

---

no other provision of Federal law, including the antitrust laws, prevents a registered securities association from adopting rules consistent with, and necessary to effectuate, the purposes and provisions of this section." (emphasis supplied)

*Investment Company Amendments Act of 1970*, S. Rep. No. 91-184, 91st Cong., 1st Sess. (1969), at p.18, reprinted in [1970] U.S. Code Cong. & Ad. News 4897, 4913 and H.R. Rep. No. 91-1382, 91st Cong., 2d Sess. (1970), at p.30.

[7] Bjurman, Barry (at *13) also acknowledges that NASD Rule 2830(d)(2) permits the charging of an asset-based sales charge while a fund is closed to new investors.

[8] Plaintiff also contends that he does assert that Franklin Distributors was barred from receiving any 12b-1 fees after the Fund was closed to new investors and that he is not simply attacking the amount of those fees (Memorandum in Opposition, p.27). The Complaint (e.g. ¶ 45) indicates otherwise. But, whatever Plaintiff's position, the outcome is the same (i.e. dismissal) under Franklin Distributors' arguments on this motion.

6

the opposite conclusion in § 22(b)(3) of the ICA and plaintiff does not (and cannot) point to any legislative provision overriding that clear Congressional directive.

In light of the intent of Congress expressed in § 22(b) and plaintiff's concessions that the 12b-1 fees charged by Franklin Distributors were in compliance with the limits set by Rule 2830, the Court should dismiss plaintiff's claim under § 36(b).

Plaintiff also misstates Franklin Distributors' argument, stating that Franklin Distributors is attempting to apply NASD rules to a non-member, namely the Fund (Pl.'s Opposition, p.27). To the contrary, Franklin Distributors argues simply that: (1) NASD Rule 2830 governs Franklin Distributors (as an NASD member); (2) plaintiff's claim is against Franklin Distributors; and (3) Rule 2830, because of Congress' direct statement in § 22(b)(3), overrides § 36(b) and protects Franklin Distributors from any conflicting determination under § 36(b).[9]

\* \* \*

Plaintiff's only cited authority, Pfeiffer v. Bjurman, Barry & Associates, 2004 WL 1903075 (S.D.N.Y. Aug. 24, 2004), provides no support for the question posed by this motion, namely whether, under the clear Congressional mandate in § 22(b)(3) of the ICA, an NASD Rule approved by the SEC pursuant to § 22(b)(1) of the ICA, has primacy over § 36(b) of the ICA for determining whether a fee paid by a mutual fund is excessive.

---

[9] Interestingly, plaintiff's criticism is more properly directed at the sole opinion it cited, Bjurman, Barry. There, one of the Court's errors was to confuse the entity subject to Rule 2830. The Court denied the motion to dismiss "with respect to marketing, distribution and service fees charged by the Fund" (at \*2). Obviously, the alleged wrong is the fee charged to the Fund by the defendant.

7

First, the Court in <u>Bjurman, Barry</u> did not consider (and was not advised thereon by counsel's briefs [see Supplemental Addenda K and L]) the critical role of § 22(b)(3) of the ICA. The Court did not even mention Congress' clear directive in § 22(b)(3) that compliance with an NASD rule promulgated under § 22(b) and approved by the SEC (e.g. Rule 2830) trumps any other provision of federal law (e.g. § 36(b)).

Second, the Court in <u>Bjurman, Barry</u> did not consider the statements of the SEC (as well as the NASD) to the effect that Rule 2830 provides <u>the</u> governing guideline on what is an excessive 12b-1 distribution fee for mutual fund shares.

Third, in <u>Bjurman, Barry</u> the only argument submitted in defense of the contested 12b-1 fees was that "given the mechanics of Rule 12b-1 fees, such fees do not decrease simply because a fund closes to new investors." (at *5). That argument (whatever its merits) is not the basis for Franklin Distributors' motion to dismiss at bar.

## Conclusion

For the foregoing reasons, the Court should grant the motion of Defendants Franklin/Templeton Distributors, Inc. and William J. Lippman to dismiss Count I of the Complaint pursuant to Rule 12(b)(6).[10]

Dated:  November 3, 2004

/s/ Daniel A. Pollack
Daniel A. Pollack
Edward T. McDermott
Anthony Zaccaria
POLLACK & KAMINSKY
114 West 47th Street
New York, NY 10036
Tel. (212) 575-4700
Fax  (212) 575-6560

*Attorneys for Defendants*
  *Franklin/Templeton Distributors,*
  *Inc. and William J. Lippman*

---

[10] If Count I is dismissed, the entire action should ultimately be dismissed because the alleged alternate basis of jurisdiction for Counts II and III — diversity of citizenship — does not exist.  This can and will be demonstrated to the Court at the appropriate time, i.e. after the ruling on Count I.  Since this involves a factual showing, we chose not to distract attention from the more important law point raised as to Count I.