*SUPPLEMENTAL ADDENDUM  F*

ORDER APPROVING PROPOSED RULE CHANGE BY NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ("NASD")
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 11725

INVESTMENT COMPANY ACT OF 1940
Release No. 8980

1975 SEC LEXIS 626

October 10, 1975

CORE TERMS: load, proposed rule, maximum, cash management, Securities Exchange Act, single-payment, excessive, investor, NASD Rules of Fair Practice, variable annuity, rule change, contractual, no-load

TEXT: [*1]

The Commission today approved the proposed amendment to Article III, Sections 26 and 29, of the NASD Rules of Fair Practice, by order pursuant to Section 19(b)(2) of the Securities Exchange Act of 1934 ("the 1934 Act"), *15 USC 78s*(b)(2), as amended by Pub. L. No. 94-29, 16 (June 4, 1975). The proposed rule change was filed with the Commission in accordance with Section 19(b)(1), as amended, of the 1934 Act on July 16, 1975, and was published for comment on August 14, 1975 (Securities Exchange Act Release No. 11593, Investment Company Act Release No. 8893, File No. SR-13).

I. The Amendments

The rule change provides that no member shall offer or sell shares of an open-end investment company or a single-payment contractual plan, at a sales charge which is excessive, taking into consideration all relevant circumstances. For funds and single-payment contractual plans the rule provides a ceiling of 8.50% on sales charges (declining to 6.25% for larger purchases), but conditions the right to charge the maximum on the fund's offering (1) dividend reinvestment at net asset value, (2) rights of accumulation, and (3) volume discounts, as defined in the rule. A specific deduction from the[*2] maximum allowable sales charge is imposed for failure to provide each of the services.

The rule change also provides maximum sales loads ranging from 8.50% down to 6.50% on single-payment variable annuities, and a maximum of 8.50% of total payments as of a date not later than the twelfth year after purchase for multiple payment variable annuity contracts.

II. The Reasons for Commission Approval

The Commission endorses the NASD's statement of the basis and purpose of the proposed rule change, which was filed along with the text of the rule and reads as follows:

"The authority for the proposed amendments is contained in Section 22(b) of the Investment Company Act of 1940 which empowers the Association to adopt rules to prevent its members from selling to the public redeemable securities issued by a registered investment company at prices which include an excessive sales load and allows for reasonable compensation for sales personnel, broker/dealers, and underwriters, and for reasonable sales loads to investors.

"The purpose of the amendments is to establish a structure of maximum sales charges which will give effect to, among other things, the amount of the purchase and special[*3] investor privileges or benefits associated with a particular mutual fund or variable annuity. The Association believes that the amendments are necessary and appropriate in order to implement the provisions of Section 22(b) of the Investment Company Act." n1

n1 NASD File No. 16-1-2-35, July 16, 1975.

The Commission finds that the proposed rule change complies with Section 22(b) of the Investment Company Act of 1940, and is consistent with the provisions of the Securities Exchange Act of 1934, and the rules and regulations thereunder applicable to the NASD. The Commission also finds that the proposed rule change does not impose any burden on competition not necessary or appropriate in furtherance of the purposes of the Securities Exchange Act of 1934.

III. Proposed Modifications

The Commission had previously requested that the NASD consider modifying the proposed rule change (i) to provide a penalty from the maximum sales load for failure to offer an exchange privilege, and (ii) to specify a lower maximum sales charge for so-called "cash management" funds. n2

n2 Letter of November 4, 1974 to Gordon S. Macklin, President, NASD. The NASD responded in detail to the Commission's request on July 16, 1975. The portfolios of "cash management" funds consist primarily of short-term U.S. Government obligations, bankers' acceptances, certificates of deposit, and commercial paper.
[*4]

While approving the proposed rule change without these modifications, the Commission wrote to the NASD on October 10, 1975 stating its understanding that the NASD would continue to consider the need for such provisions. In addition, in view of the fact that most cash management funds are sold at no-load or loads of less than 1%, the Commission expressed concern over those cash management funds which charge conventional sales loads since they are significantly higher than ocmpetitively established rates. It also suggested several factors which should be considered in determining whether a fund's sales charge is "excessive," including shareholder redemption ratios, representations of the fund to prospective investors, and the availability and actual use of an exchange privilege at no-load between the fund's shares and those of other load funds.

* * *

IT IS THEREFORE ORDERED, pursuant to Section 19(b)(2)(A) of the Securities Exchange Act of 1934, that the proposed amendments to Article III, Sections 26 and 29, of the NASD Rules of Fair Practice, filed by the NASD with the Commission on July 16, 1975, and published in the Federal Register on August 22, 1975, n3 be, and they hereby[*5] are, approved.

n3 *40 FR 36813*, August 22, 1975. The NASD has consented to the Commission's acting on this rule more than 35 days from the date of its publication in the Federal Register.

By the Commission.