*SUPPLEMENTAL ADDENDUM  G*



National Association of
Securities Dealers, Inc.
1735 K Street, N W
Washington, D.C. 20006
(202) 728-8000

September 12, 1991

Katherine A. England, Esq.
Over-the-Counter Regulation
Division of Market Regulation
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549
Mail Stop 5-1/Room 5184

    Re:    **SR-NASD-90-69**

Dear Ms. England:

    Pursuant to the solicitation by the Securities & Exchange Commission ("SEC") of comments on the above-referenced proposed rule change published in the *Federal Register* on April 12, 1991, the Commission received twenty comment letters.[1] Seven of these commentors previously submitted their views to the NASD in response to a request for comments in Notice to Members 90-26. Of the letters received, two commentors emphatically support the proposal to limit asset-based sales charges imposed by investment companies, six commentors support the proposal but recommend modification, four commentors specifically oppose particular provisions without opposing the entire proposal, and seven commentors oppose the proposal in its entirety. Please note that one additional comment was received opposing the proposal as published in Notice to Members 90-26. This commentor's recommendations have already been integrated into the proposed rule change.

    In miscellaneous comments, the NASD was commended on its proposed one-year waiting period prior to the implementation of the rule change following SEC approval.[2] In addition, a comment was received strongly supporting the rule change and specifically endorsing the exclusion of management fees in proposed Subparagraph (b)(8).[3] Three commentors suggested the NASD issue a formal "Question & Answer" release (i.e. an NASD Notice to Members)

---

[1]  SEC Release No. 34-29070 (4/12/91); 56 F.R. 16137 (4/19/91).

[2]  Investment Company Institute.

[3]  Fidelity Management & Research Company.

Katherine A. England
September 12, 1991
Page No. 2

following SEC approval.[4]  This suggestion appears to be an excellent means of addressing
technical issues raised during the one-year waiting period concerning implementation of the
proposed rule change and this suggestion will be followed.  If questions arise which would be
appropriately answered in an NASD Notice to Members, the NASD will issue such a Notice
during the interim year prior to implementation. Finally, two commentors who favor the proposal
requested additional flexibility in the administration of the rule.[5]  The NASD is prepared to
consider such requests after the first year in which the rule has been in effect.

In response to the Commission's specific request for comments on the no-load exception
in proposed Subparagraph (d)(3), a comment was received supporting the rule change and
endorsing the inclusion of funds with an asset-based sales charge or service fee not exceeding
.25% of average annual assets within the definition of "no-load" fund.[6]  In addition, a comment
was received based upon the proposed rule change as published in Notice to Members 90-26
urging that the proposed definition of no-load funds provide such an exception.[7]  Four
comments were received urging the deletion of this exception for funds charging 25 basis points
or less to finance sales and related activities.  Commentors claimed that such an exception would
be misleading and confusing to the investor.[8]  The NASD believes that confusion of the investor
will be minimal since fees and charges are set forth in the fee table at the forefront of the
prospectus.  The NASD notes that this exception was created as a result of three comments
received in response to Notice to Members 90-26.[9]  Previously, the NASD had taken the
position that a fund charging a sales fee, regardless of what type, could not be referred to as no-
load. The NASD is of the opinion that the industry generally supports this exception as indicated
by the comment of the Investment Company Institute.

---

[4]  Colonial Management Associates, Inc.; Investment Company Institute; T. Rowe Price
Associates.

[5]  Investment Company Institute; Keystone Group.

[6]  Investment Company Institute.

[7]  The Vanguard Group of Investment Companies.

[8]  Benham Capital Management Group; Scudder, Stevens & Clark, Inc.; T. Rowe Price
Associates; Charles Trzcinka.

[9]  The Boston Company, Capital Research and Management Company, and Investment
Company Institute.

Katherine A. England
September 12, 1991
Page No. 3

One comment was received questioning whether the aggregate cap could be increased for no-load fund sales to employees or special groups which are not charged sales fees.[10] Because the NASD has taken the position that fund accounting and individual shareholder accounting are equally acceptable, this question will be determined by the type of accounting the fund chooses. In the event a fund uses individual shareholder accounting, the cap will be determined by the exact amount paid in by each shareholder and may be adjusted accordingly.

Another comment generally in favor of the proposed rule change suggested allowing an asset-based distribution charge with an annual maximum of .75% – 1.0% which is not limited with a cap.[11] The NASD believes that a modification of this sort would undermine the intent of the rule. An overall cap, which is equivalent regardless of the type of sales charge assessed, is the basis for the proposed rule change.

Several issues requesting clarification were raised by a single commentor.[12]  The commentor inquired as to whether sales charges exceeding .75% may be imposed subsequent to the cap being reduced to zero and the accruals of asset-based sales charges being suspended, so long as the sales charges for the entire year do not exceed .75% of average net assets. As proposed, the rule change would not permit this. The NASD believes that the scenario described by the commentor will occur very infrequently. Therefore, after the first year of implementation, the NASD will consider such actual situations on a case-by-case basis in order to gain experience on which an appropriate rule may be based in the event that this situation needs to be addressed by a rule change or an interpretation by the Board of Governors.

The same commentor noted that the term "plus interest charges on such amount" used in proposed Subparagraphs (d)(2)(A), (d)(2)(B), and (d)(2)(C) would require that interest be calculated on the gross cap rather than the remaining balance, and furthermore, noted that there is no standard mandating the frequency at which the remaining balance be determined. The NASD intended interest to be calculated on the remaining balance and not the gross cap. This clarification will be included in the NASD's Notice to Members announcing adoption of this rule change.

With regard to exchanges, clarification was requested as to (i) whether exchanges are treated as new sales or if the number of years in which sales charges were previously paid are taken into consideration; (ii) whether the current market value or the original cost is used; and (iii) what transpires if the "from" fund cap is already at zero. It is the position of the NASD that exchanges are treated as new sales of the fund into which monies are transferred; the current

---

[10]  Colonial Management Associates, Inc.

[11]  Invesco MIM Inc.

[12]  Colonial Management Associates, Inc.

Katherine A. England
September 12, 1991
Page No. 4

market value of the new fund is used to determine cost and all associated charges; and if the "from" fund is at zero, the new fund sets up new maximums and the old caps would no longer be applicable.

Two commentors requested that the language of Subparagraph (b)(9), defining service fees, be amended to specifically exclude transfer agent, maintenance, and custodian fees.[13]  As proposed, service fees are intended to be distinguished from other fees as a payment for personal service provided to the customer. This fee does not include recordkeeping charges, accounting expenses, transfer costs, or custodian fees. Payment for personal services, such as a registered representative providing information on investments, is not intended to be excluded.[14]  The NASD does not believe that an amendment is necessary.

Another commentor suggested that small one-time asset-based sales charges on very large purchases (e.g. 1% on sales of $1 million or more) should not trigger a change in the fund's classification resulting in a substantial decrease in the maximum sales charge permitted.[15]  It is difficult to exclude the "one-time charges" from the parameters of the rule as the fund's own disclosure documents describe these fees as asset-based sales charges. The NASD, therefore, believes that providing special relief in this situation would not be compatible with the proposed rule.

Two commentors suggested that the 6.25% cap be modified to more fairly reflect the average account size and the initial sales charge structure of the fund and that the .25% service fee limitation be modified to vary according to average account size within the fund.[16]  These suggestions were previously considered in the NASD's review of comments in response to Notice to Members 90-26 and found to create new categories which serve to complicate the application of the rule without providing noticeable benefit to the investor.  Moreover, the modification of the service fee limitation would encourage discrimination between investors without justification. The NASD does not agree that it necessarily costs more to service large accounts than small accounts as most costs would tend to be fixed.  A fixed percentage rate, in any event, results in a higher dollar fee for large accounts than for small accounts.

---

[13]  Scudder, Stevens & Clark, Inc.; T. Rowe Price Associates.

[14]  An additional explanation is contained in Section 3 of the Form 19b-4 at page 12.

[15]  Lord Abbett & Co.

[16]  Bouchey & Bouchey, Inc.; Kleinbard, Bell & Brecker.

Katherine A. England
September 12, 1991
Page No. 5

Three commentors oppose the imposition of the .25% service fee limitation entirely. It is their position that 25 basis points annually is inadequate compensation for brokers.[17] The NASD believes that a .25% service fee annually is adequate compensation for the service provided as no aggregate cap is imposed on service fees and such fees may be assessed indefinitely.

With respect to limitations on service fees, one commentor noted that the language of the rule change does not specifically limit fees paid by an "underwriter" to the actual party providing service to the customer.[18]  As a matter of NASD jurisdiction, fees paid directly to a member by an investment company may be, and are, limited.   Where the "underwriter" uses another member to actually provide the service to the customer, the rule change will limit the investment company's fees to the "underwriter," and the fees paid by the "underwriter" to the member-provider may not exceed the limitations set forth in the rule.

Also addressing the .25% service fee limitation, one commentor disagreed with the application of the limitation to pure no-load funds, contending that the intent of the rule is to regulate sales charges. Moreover, the same commentor challenged the NASD's authority to regulate service fees that are non-promotional in nature.[19]  The NASD intends to differentiate between sales charges and service fees, allowing service fees to remain uncapped and encouraging service to be provided to the customer with compensation to the registered representative. The NASD has jurisdiction to regulate fees received by its members pursuant to Section 22 of the Investment Company Act of 1940 ("1940 Act") and Section 15A(b)(6) of the Securities Exchange Act of 1934 ("1934 Act").

Three commentors contended that the rule change should not be retroactively applied to investments made under the then-existing rules where fees are adequately disclosed in the prospectus and/or fee table.[20]  The NASD believes that it is advantageous for investment companies to apply the proposed rule change to investments made prior to the effective date of the proposed rule change. The NASD's proposed rule change would apply current charges to old debts, thereby allowing investment companies to recoup distribution costs which were previously paid and intended to be amortized. Without this provision, funds would have difficulty paying off their debts while remaining within the rule's limitations.  In addition, if this were not permitted, funds would be forced to utilize three different net asset values: (i) investments made

---

[17]  Kleinbard, Bell & Brecker; Lincoln Investment Planning, Inc.; Loscalzo & Saile.

[18]  Colonial Management Associates, Inc.

[19]  Drinker Biddle & Reath.

[20]  Bouchey & Bouchey, Inc.; Kleinbard, Bell & Brecker; Lincoln Investment Planning, Inc.

Katherine A. England
September 12, 1991
Page No. 6

before the new rule, (ii) investments made under the new rule, and (iii) investments made after the cap is reached.

Two commentors disagreed with the provision limiting annual asset–based sales charges to .75% of net assets. They believe that the 6.25% maximum cap on combined fees is sufficient.[21]  The NASD believes that the proposed .75% asset–based sales charge annual limitation, in addition to the maximum fund limitation, is necessary and represents the highest figure considered fair and reasonable.

Seven commentors expressed complete opposition to all aspects of proposed rule change. Several of these commentors suggested that complete disclosure would better accomplish the intended goals of the rule change. Similarly, these commentors asserted that shareholders seeking alternatives to funds with sales charges and 12b-1 fees have a variety of no-load funds from which to choose.[22]  The NASD believes that disclosure is insufficient to achieve market uniformity and investor protection.  Furthermore, the Association is clearly empowered under Section 15A(b)(6) of the 1934 Act and Section 22(b) of the 1940 Act to enact these limitations.

Other commentors argued that 12b-1 fees should not be further limited[23] and that regulation of asset–based sales charges places investment company funds at a significant competitive disadvantage as against other investment products.[24]  The NASD, as previously stated, does not believe that the proposed rule change imposes any burden on the ability of investment companies to compete for investors' dollars not necessary or appropriate in furtherance of the purposes of the 1934 Act.

Two comments were submitted by a commentor who previously asserted these same arguments in response to the request for comments published in Notice to Members 90-26.[25] He stated that the proposed rule change complicates the payment to brokers and clouds the investor's ability to determine how much he/she is paying for services.  In addition, he argued that the service fees will act as a hidden load in excess of the maximum limitations.  The NASD

---

[21]  Keystone Group; Sullivan & Worcester.

[22]  Bouchey & Bouchey, Inc.; Kleinbard, Bell & Brecker; L.A. Hendershot & Associates, Inc.; Lincoln Investment Planning, Inc.; Loscalzo & Saile; Manchester Advisors.

[23]  J. Bush & Co. Inc.; L.A. Hendershot & Associates, Inc.; Lincoln Investment Planning, Inc.; Loscalzo & Saile; Manchester Advisors.

[24]  Kleinbard, Bell & Brecker; L.A. Hendershot & Associates, Inc.; Lincoln Investment Planning, Inc.; Manchester Advisors.

[25]  Charles Trzcinka.

Katherine A. England
September 12, 1991
Page No. 7

believes that the proposed rule change will provide adequate compensation for continuous service while providing protection for investors. Moreover, the proposed rule change will require disclosure at the forefront of the prospectus to advise investors of annual service fees. The commentor requested that shareholder accounting for distribution expenses be mandated. Under the proposed rule change, both individual shareholder and fund-level accounting are acceptable. The NASD has considered mandating individual shareholder accounting and rejected it as too costly. We note, however, that individual shareholder accounting is permitted, and even encouraged, at the discretion of the fund. It is foreseeable that the type of accounting used by a fund will in the future become a competitive marketing strategy for funds choosing individual shareholder accounting over fund-level accounting.

The NASD has carefully considered the comments received and has determined that the benefits of this proposed rule change strongly outweigh the minor disadvantages which may result. The Association asserts that the proposed rule change will assist the NASD in meeting its obligation under the 1940 Act Congressional mandate to prevent excessive sales charges on mutual fund shares sold to the public by NASD members. For the above reasons, the NASD urges the Commission to approve the proposal.

Sincerely,

A. John Taylor
Vice President
Investment Companies/Variable Contracts

cc:    Frank J. Wilson

## Alphabetical List of Commentors

1. Benham Capital Management Group
2. Bouchey & Bouchey, Inc. (representing Lincoln Investment Planning)
3. Colonial Management Associates, Inc.
4. Drinker Biddle & Reath
5. Fidelity Management & Research Co.
6. Invesco MIM Inc.
7. Investment Company Institute
8. J. Bush & Co. Inc.
9. Keystone Group
10. Kleinbard, Bell & Brecker
11. L.A. Hendershot & Associates, Inc.
12. Lincoln Investment Planning, Inc.
13. Lord Abbett & Co.
14. Loscalzo & Saile
15. Manchester Advisors
16. Scudder, Stevens & Clark, Inc.
17. Sullivan & Worcester
18. T. Rowe Price Associates, Inc.
19. Charles Trzcinka (representing University at Buffalo)
20. The Vanguard Group of Investment Companies