*SUPPLEMENTAL ADDENDUM H*

Self-Regulatory Organizations; Notice of Filing and Immediate Effectiveness of Proposed Rule Change by National Association of Securities Dealers, Inc. Relating to Publication of Clarification of Issues Relating to NASD Rule Governing Asset-Based Sales Charges in the Sale of Mutual Fund Shares
File No. SR-NASD-93-23

SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934, Release No. 34-32118

1993 SEC LEXIS 810; 58 FR 19505

April 8, 1993

CORE TERMS: asset-based, aggregate, service fees, calculate, deferred, notice, service fee, front-end, maximum, prime, cap, starting, effective date, gross sales, calculation, prospectus, proposed rule, offering price, net assets, shareholder, underwriter, exchanged, calculated, reinvestment, deducted, monthly, zero, exhausted, depleted, paying

TEXT: [*1]

Pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act"), *15 U.S.C. 78s*(b)(1), notice is hereby given that on April 5, 1993, the National Association of Securities Dealers, Inc. ("NASD" or "Association") filed with the Securities and Exchange Commission ("SEC" or "Commission") the proposed rule change as described in Items I, II, and III below, which Items have been prepared by the NASD. The NASD has designated this proposal as one constituting a stated policy, practice, or interpretation with respect to the meaning, administration, or enforcement of an existing rule under Section 19(b)(3)(A)(i) of the Act, which renders the rule effective upon the Commission's receipt of this filing. The Commission is publishing this notice to solicit comments on the proposed rule change from interested persons.

I. SELF-REGULATORY ORGANIZATION'S STATEMENT OF THE TERMS OF SUBSTANCE OF THE PROPOSED RULE CHANGE

The NASD is herewith filing a rule change clarifying the application of its rule relating to asset-based sales charges imposed in connection with the purchase of mutual fund shares.

II. SELF-REGULATORY ORGANIZATION'S STATEMENT OF THE PURPOSE OF, AND STATUTORY [*2]BASIS FOR, THE PROPOSED RULE CHANGE

In its filing with the Commission, the NASD included statements concerning the purpose of and basis for the proposed rule change and discussed any comments it received on the proposed rule change. The text of these statements may be examined at the places specified in Item IV below. The NASD has prepared summaries, set forth in Sections (A), (B), and (C) below, of the most significant aspects of such statements.

(A) Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change

The NASD submitted to the SEC in SR-NASD-90-69 a proposed rule change to amend Article III, Section 26 of the Rules of Fair Practice to limit investment company asset-based sales charges imposed in connection with the purchase of mutual fund shares. The proposed rule change was approved by the SEC on July 7, 1992, n1 but does not take effect until July 7, 1993. Pursuant to a letter dated September 18, 1991, from A. John Taylor, Vice President, Investment Companies/Variable Contracts, NASD, to Katherine A. England, Branch Chief, Over-the-Counter Regulation, Division of Market Regulation, SEC, the NASD, in response[*3] to a commenter's suggestion, undertook to issue a Question and Answer Release in order to address "technical issues raised during the one-year waiting period concerning implementation of the proposed rule change . . . if questions arise which would be appropriately answered in [a Notice to Members]." n2 Technical and other issues did, in fact, arise during the one-year period prior to effectiveness of SR-

NASD-90-69, the answers to which were published in question and answer format in Notice to Members 93-12 ("NTM 93-12"), which is attached hereto as Exhibit 1.

n1 See Securities Exchange Act Release No. 30897 (July 7, 1992), *57 FR 30985* (July 13, 1992) (SR-NASD-90-69).

n2 The SEC approval order states that the NASD represented it would issue a formal "Question and Answer" release following SEC approval, to be filed pursuant to Section 19(b)(3)(A) of the Act, clarifying issues raised by commenters regarding service fees, the appropriate amount for calculating interest charges for purposes of the rule, and exchange transactions. Securities Exchange Act Release No. 30897 (July 7, 1992), *57 FR 30985* (July 13, 1992) (SR-NASD-90-69), note 18. See, letter of July 30, 1992 from Suzanne E. Rothwell, Associate General Counsel, NASD, to Katherine A. England, Branch Chief, Over-the-Counter Regulation, Division of Market Regulation, SEC.
[*4]

NTM 93-12 addresses, in question and answer format, (1) Calculation of Sales Charges and Interest, (2) Retroactive Calculation of Remaining Amounts, (3) Service Fees, (4) Exchanges, and (5) Miscellaneous questions. These questions and answers are self-explanatory and are, accordingly, incorporated herein by reference.

The NASD believes that the proposed rule change is consistent with the provisions of Section 15A(b)(6) of the Act n3 in that it promotes just and equitable principles of trade, fosters cooperation and coordination with regulators, and generally provides for the protection of investors and the public interest by assisting members in applying the provisions of Article III, Section 26 of the Rules of Fair Practice which limit the sales charges investors may be required to pay in connection with the sale of investment company shares.

n3 *15 U.S.C. § 78o-3*.

(B) Self-Regulatory Organization's Statement on Burden on Competition

The NASD does not believe that the proposed rule change will result in any burden on competition that is not necessary or appropriate in furtherance of the purposes of the Act, as amended.

(C) Self-Regulatory Organization's Statement [*5] on Comments on the Proposed Rule Change Received from Members, Participants, or Others

Written comments were neither solicited nor received.

III. DATE OF EFFECTIVENESS OF THE PROPOSED RULE CHANGE AND TIMING FOR COMMISSION ACTION

The foregoing rule change has become effective April 5, 1993 pursuant to Section 19(b)(3)(A)(i) of the Act and subparagraph (e) of Rule 19b-4 thereunder, which render the rule effective upon the Commission's receipt of this filing, in that it constitutes a stated policy, practice, or interpretation with respect to the meaning, administration, or enforcement of an existing rule.

At any time within 60 days of the filing of a rule change pursuant to Section 19(b)(3)(A) of the Act, the Commission may summarily abrogate the rule change if it appears to the Commission that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of the Act

IV. SOLICITATION OF COMMENTS

Interested persons are invited to submit written data, views, and arguments concerning the foregoing. Persons making written submissions should file six copies thereof with the Secretary, Securities[*6] and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549. Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the Commission, and all written communications

relating to the proposed rule change between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C. 552, will be available for inspection and copying in the Commission's Public Reference Room. Copies of such filing will also be available for inspection and copying at the principal office of the NASD. All submissions should refer to the file number in the caption above and should be submitted by [insert date 21 days from the date of publication].

For the Commission, by the Division of Market Regulation, pursuant to delegated authority, 17 CFR 200.30-3(a)(12). n4

n4 17 CFR 200.30-3(a)(12) (1992).

Exhibit 1

NASD NOTICE TO MEMBERS 93-12

Questions and Answers About New NASD (registered) Rules Governing Investment Company Sales Charges -- Article III, Sections 26(b) and (d) of the Rules of Fair Practice

Executive Summary

Since the Securities[*7] and Exchange Commission (SEC) approved new NASD (registered) rules governing investment company sales charges on July 7, 1992, the NASD has fielded numerous questions from member firms and mutual funds concerning the interpretation and application of these rules. In anticipation of the July 7, 1993, effective date of the new rules, the NASD has compiled in this Notice frequently asked questions and answers to help members understand and apply these rules. The categories addressed are calculation of sales charges and interest, retroactive calculation of remaining amounts, service fees, and exchanges.

Background

On July 7, 1992, the SEC approved amendments to Article III, Sections 26(b) and (d) of the Rules of Fair Practice (Rules) relating to investment company sales charges as announced in Notice to Members 92-41 (August 1992). The new Rules take effect on July 7, 1993. The text of the new Rules follows this Notice. The following questions and answers have been developed to assist members in interpreting and implementing the new Rules.

The statements contained in this Notice to Members supersede and replace any and all prior statements of the NASD on the subject [*8] of investment company sales charges to the extent such prior statements are inconsistent with this Notice. The NASD may publish other question and answer Notices as needed to answer member questions.

Members are also reminded that, while Article III, Section 26 of the Rules of Fair Practice addresses investment company issues, the Rules apply to members, not investment companies. Members are obligated under the Rule to ensure that the sales charges paid by the investment companies for the shares that they sell to the general public comply with the requirements of the Rules. A member that sells shares of an investment company in violation of the Rule is subject to disciplinary action, not the investment company. Nevertheless, members may rely on the statements in a fund's prospectus, or on statements from the fund about the amount of sales charges paid in the distribution of fund shares, unless the member knows, or should have known on the exercise of reasonable diligence, that the statements are not true.

Questions regarding this Notice may be directed to R. Clark Hooper, Vice President, Investment Companies at (202) 728-8329 and Elliott R. Curzon, Senior Attorney, Office of [*9] General Counsel at (202) 728-8451.

Questions and Answers

As an aid to understanding the questions and answers contained in this Notice, the NASD has developed a comprehensive example using a hypothetical investment company to show the calculations for remaining amount,

Question #3: The Rules permit funds to increase their remaining amount by adding interest at the prime rate plus one percent. How and when should a fund determine the appropriate interest rate?

Answer: NASD Notice to Members 90-56 (September 1990) describes the prime rate as "the most [*12] preferential rate of interest charged by the largest commercial banks on loans to their corporate clients" and refers to the rate published daily in The Wall Street Journal. Thus, the prime rate used for this purpose should be the rate appearing in The Wall Street Journal, which represents "the base rate on corporate loans posted by at least 75 percent of the nation's 30 largest banks." The prime rate in effect on the date when the fund calculates its remaining amount plus one percent (see Question 1) if the fund calculates daily or, alternatively, if a fund calculates its remaining amount less frequently, an average of the prime rates over the period plus one percent should be used to calculate the amount by which a fund may increase its remaining amount. Funds generally should select and consistently use one of the above two alternatives.

Question #4: To calculate the increase in a fund's remaining amount based on the interest allowed (referred to in Question 3), to what amount should the prime rate plus one percent be applied?

Answer: Subparagraphs (d)(2)(A), (B), and (C) of Article III, Section 26 of the NASD Rules of Fair Practice refer to "interest charges on such [*13] amount," and "such amount" is the appropriate aggregate cap on sales charges. As indicated in Notice to Members 92-41 (August 1992), however, the NASD intended that interest be calculated not on the appropriate aggregate cap but rather on the fund's remaining amount before the current interest calculation (i.e., the portion of the amount permitted to be charged that has not yet been paid). In calculating the permitted interest allowance, the fund should apply the appropriate interest rate (prime plus one percent) (see answer to Question 3) to its remaining amount or "balance for interest" (see discussion in answer to Question 2). For example, if a fund calculates its remaining amount daily, but pays asset-based sales charges monthly, it should apply the prime rate plus one percent to the current day's "balance for interest." If a fund calculates its remaining amount monthly and pays asset-based sales charges monthly, it should apply an average of the month's prime rates plus one percent to its average remaining amount for the month. The NASD believes that if a fund adopts a particular method of accruing or paying charges and calculating its remaining amount and interest, it[*14] must consistently apply and adhere to the chosen practices. Funds may not change practices for short-term advantage to the distributor or underwriter.

Question #5: If a fund's remaining amount reaches zero, what do the Rules require?

Answer: If a fund's remaining amount reaches zero it must stop accruing asset-based sales charges and retain any deferred sales charges collected, until it has new sales that increase the remaining amount. In the NASD's view, the prudent fund whose remaining amount is approaching zero should calculate its remaining amount on a more frequent (even daily) basis so that it stops accruing asset-based sales charges when its remaining amount reaches zero.

The NASD is aware that in many cases front-end sales charges are paid directly to the selling member through deduction of the sales charge from the proceeds of sale; however, front-end sales charges deducted by the member will not exceed the remaining amount because each purchase will raise the remaining amount and the increase will not be consumed by the front-end sales charge.

Question #6: If a fund generates no sales or discontinues selling its shares, must it stop paying any asset-based sales charges? [*15]

Answer: No. The Rule provides only that the fund stop paying sales charges (either asset-based or deferred) when its remaining amount is depleted. A fund may fail to generate sales or stop selling its shares before its remaining amount is exhausted.

Question #7: For purposes of determining when a fund must begin to retain deferred sales charges because the remaining amount has been exhausted, must the fund determine on which day it exhausted the remaining amount?

Answer: The requirement that the fund retain deferred sales charges upon exhausting its remaining amount will be deemed to be met if the fund begins to retain those charges no later than the first day of the month following the month during which the remaining amount was depleted. As stated above, a fund should calculate its remaining amount more frequently as it approaches zero. In addition, a fund which has depleted its remaining amount must also continue to