UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC R. BAHE, Custodian, CGM Roth Conversion IRA,<br>                               Plaintiff,<br>         v.<br>FRANKLIN/TEMPLETON DISTRIBUTORS, INC., and WILLIAM J. LIPPMAN,<br>                               Defendants, and<br>FRANKLIN BALANCE SHEET INVESTMENT FUND,<br>                               Nominal Defendant. | Civil Action No. 04-11195 (MLW) |

**PROPOSED PLAINTIFF'S SUR-REPLY IN OPPOSITION TO MOTION
OF DEFENDANTS FRANKLIN/TEMPLETON DISTRIBUTORS, INC.
AND WILLIAM J. LIPPMAN TO DISMISS COUNT I OF THE COMPLAINT**

In the Reply Memorandum of Defendants Franklin/Templeton Distributors, Inc. ("Distributors") and William J. Lippman (the "Reply Memo"), the Defendants make the outlandish argument, without the support of any judicial decision, that a rule of the NASD, a self-regulatory body, predominates over, overrides, and indeed repeals, laws of the United States – in particular, Section 36(b) of the Investment Company Act of 1940 ("ICA") – and the rules of the Securities and Exchange Commission – in particular, Rule 12b-1. The Defendants did not make this argument in their initial Memorandum in support of their motion to dismiss, thereby preventing the Plaintiff from responding to it in his memorandum opposing the motion to dismiss. Accordingly, Plaintiff respectfully submits this sur-reply.[1]

---

[1] The Stipulation filed by the parties on October 29, 2004, and approved by the Court on November 5, 2004, provides that Defendants' motion to dismiss is now directed only to Count I of the Complaint, which asserts a claim against Distributors under § 36(b) of the ICA. In light of the Stipulation, Defendants do not seek dismissal of Counts II and III of the Complaint, for breach of fiduciary duty against the Distributors and Lippman, respectively. Accordingly, those claims,

As demonstrated below, Defendants' argument:

a. is contrary to the express language of the ICA;

b. is contrary to the explicit intent of Congress in enacting the provisions of the ICA at issue;

c. is contrary to the observations of the Supreme Court concerning the rule-making authority of the NASD;

d. asks this Court to violate established principles of statutory construction that require courts to interpret the provisions of a statute harmoniously with all other provisions of the statute; and

e. asks this Court to violate established principles of statutory construction that require courts, if at all possible, to interpret the provisions of a statute in a way that would not render the statute unconstitutional.

## ARGUMENT

### NASD RULE 2830 DOES NOT PREEMPT OR "TRUMP" § 36(b) OF THE ICA.

### The Enactment of §§ 22(b) and 36(b) Of The Investment Company Act Of 1940.

In 1970, Congress passed the Investment Company Amendments Act of 1970 (the "1970 Amendments"). *See* Pub. L. No. 91-547, 84 Stat. 1413 (1970). The 1970 Amendments added, *inter alia,* both § 22(b) and § 36(b) to the ICA, which were expressly intended to address the "potential conflict of interest" where investment advisors and their affiliates set the fees that they charge mutual funds, because the "forces of arm's-length

---

over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1367, will be unaffected by the Court's decision on the instant motion to dismiss Count I.

bargaining do not work in the mutual fund industry. . . ." *Investment Company Amendments Act of 1970*, S. Rep. No. 91-184 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4898, 4901-2, 4912 ("the "Senate Report").

### Section 36(b) of the ICA

The Senate Report explains that, in light of that conflict of interest, § 36(b) was enacted to provide an effective means "for the courts to act where mutual fund shareholders . . . believe there has been a breach of fiduciary duty." *Id.* at 4898.  Thus, § 36(b) generally provides that:

> (a)  a mutual fund's investment advisor and its affiliates have a fiduciary duty with respect to compensation received by them from the mutual fund[2]; and
>
> (b)  a mutual fund's shareholders may bring an action against the fund's investment advisors and/or affiliates to recover, on behalf of the fund, the compensation that was collected in breach of the advisor's and/or the affiliate's fiduciary duty.  *See* 15 U.S.C. § 80a-35(b).

Significantly, in describing the new § 36(b), the Senate Committee emphasized that:

> In the event that court action is brought to enforce this fiduciary duty, . . . **it is intended that the court look at all the facts in connection with the determination and receipt of such compensation**, including all services rendered to the fund. . . and all compensation and payments received, **in order to reach a decision as to whether the adviser has properly acted as a fiduciary in relation to such compensation.**

Senate Report at 4910 (emphasis added).

---

[2]  There is no dispute that the Defendant Distributors is an affiliate of the Fund's investment advisor, and therefore has a fiduciary duty to the Fund pursuant to § 36(b). *See* Complaint, ¶¶ 7, 19-20.

### Section 22(b) of the ICA

According to the Senate Report, the enactment of § 22(b) was intended "to improve the protections afforded mutual fund investors in the sales commission area . . . ." *Id.* at 4904.

Section 22(b) consists of three subsections, as follows:

#### Section 22(b)(1) of the ICA

Section 22(b)(1) provides that a securities association registered with the SEC, such as the NASD,[3] may adopt rules to prevent excessive sales loads in the sale of mutual funds.

The legislative history of § 22(b)(1), and its universal and consistent interpretation by the courts, by the SEC, and indeed, by the NASD itself, all establish that § 22(b)(1) authorizes the NASD to establish rules that impose a <u>cap</u> – that establishes the <u>maximum</u> amount of distribution fees its members may collect. Specifically:

- The Senate Report notes that: "rather than recommending that the Congress set a **maximum** statutory commission rate for mutual fund sales loads," the proposed amendments to the ICA would leave that to industry self-regulation, *see* Senate Report at 4888;

- As recognized by the Supreme Court of the United States, "[s]ection 22(b) authorizes [the NASD] and the SEC to prescribe the **maximum** sales commissions or loads that can be charged in connection with a primary distribution. . . ." *United States v.*

---

[3] The NASD is a private-sector, industry association of securities dealers and brokers, registered with the SEC under the Securities Exchange Act of 1934 (the "1934 Act"). *See, e.g.*, *Jones v. SEC and Exchange Comm'n*, 115 F.3d 1173, 1182 (4th Cir. 1997) (NASD is private association of industry professionals); *United States v. NASD, Inc.*, 422 U.S. 694, 710 (1975) (NASD is registered under 1934 Act). *See also* 15 U.S.C. § 78o-3 (providing for registration with SEC as securities association and setting forth terms and conditions for same).

*NASD, Inc.*, 422 U.S. 694, 710 (1975) (emphasis added);

- In the *Pfeiffer* case, cited in Plaintiff's Opposition, the court found that Rule 2830 establishes only the upper limit of 12b-1 fees that can be charged. In a decision that is directly on point with the issue raised by the motion before this Court, the *Pfeiffer* court held that defendants could be liable under § 36(b) for collecting excessive fees notwithstanding that the fees did not exceed Rule 2830's cap, *see Pfeiffer v. Bjurman*, No. 03 Civ 9741, 2004 WL1903075, *5 (S.D.N.Y. August 26, 2004)[4]; *see also* Pltf's Opp. at 26-28;

- In Defendants' Addendum C, in which the SEC considered an NASD proposal to amend Rule 2830 to include asset-based sales charges, the SEC characterized the proposed rule change as one intended "to subject asset-based sales charges imposed in connection with mutual fund shares to a **maximum** sales charge" and further noted that the pre-existing rules of the NASD, "**impose a limitation** on the sales charge permitted . . . " and that the proposed rule change would revise the definition of sales charge to "capture all sales charges [including asset-based charges] and **subject them to the NASD's maximum sales charge rule**," *see* Defendants' Addendum C at *1-*2, *6 (emphasis added);[5] and

- In Defendants' Addendum G, which is a 1991 letter from the NASD to the SEC discussing the same rule change, the NASD made it clear that it contemplated that Rule 2830's limitations were to be "**an overall cap**" on sales charges, and that the "NASD

---

[4] Attached as Exhibit B to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opposition" or "Pltf's Opp.").

[5] Def.'s Addendum C is SEC Release No. 34-30897, in which the SEC considered the NASD proposed rule change set forth in SR-NASD-90-69. Rule 2830 was amended by SR-NASD-90-69 effective July 3, 1993.

believes that the proposed .75% asset-based sales charge annual limitation . . . is necessary and represents the **highest figure** considered fair and reasonable." *See* Def.'s Addendum G at pp. 3, 6 (emphasis added).[6]

Hence, in creating Rule 2830, the NASD has merely established the **maximum** asset-based distribution fees (.75%) and "service fees" (.25%) that a NASD member may charge.[7] Specifically, the rule simply prohibits the sale of mutual fund shares if the fees exceed certain percentages, as follows:

>   (2)    Investment Companies With an Asset-Based Sales Charge
>
>   \* \* \* \* \*
>
>   (E) No member shall offer or sell the shares of an investment company with an asset-based sales charge if:
>
>   > (i) The amount of the asset-based sales charge exceeds .75 of 1% per annum of the average annual net assets of the investment company;
>
>   \* \* \* \* \*
>
>   (5)    No member or person associated with a member shall offer or sell the securities of an investment company if the service fees paid by the investment company, as disclosed in the prospectus, exceed .25 of 1% of its average annual net assets or if a service fee paid by the investment company, as disclosed in the prospectus, to any person who sells its shares exceeds .25 of 1% of the average annual net asset value of such shares.

---

[6] By discussing this letter, cited by Defendants, Plaintiff does not concede that it is a document which this Court may consider on a motion to dismiss. *See* footnote 8, *infra.* Plaintiff discusses this letter merely to demonstrate that even the sources upon with Defendants rely establish that Rule 2830 only sets a cap on fees; it does not, as Defendants assert, act as a "safe harbor" for any asset-based sales charges that do not exceed its maximums, regardless of "**all the [other] facts in connection with the determination and receipt of such compensation**." *See* Senate Report at 4910 (emphasis added).

[7] Throughout their Reply Memo, the Defendants repeatedly demonstrate the uncontroversial fact that NASD Rule 2830 was issued pursuant to § 22(b)(1). That is not disputed.

Thus, § 22(b)(1) does not authorize, and the NASD did not promulgate in Rule 2830, a rule that *per se* immunizes any NASD member who charges fees within the specified percentages from scrutiny or liability under § 36(b) and/or Rule 12b-1. NASD Notice to Members 93-12 does nothing to change that conclusion. It speaks only of whether the conduct discussed would violate Rule 2830. It does not alter the fact that compliance with Rule 2830 is not dispositive of whether the Defendants have violated Rule 12b-1 and § 36(b).[8] In arguing to the contrary, Defendant Distributors offers no judicial decision so holding, because there is none. Rather, Defendants' <u>entire</u> argument is built on its assertion that such a *per se* rule should be created "by logical extension." Reply Memo at 6.

**Section 22(b)(2) of the ICA**

Section 22(b)(2) authorizes the SEC to "alter or supplement" the rules of the NASD "at any time" in order to ensure that the public does not pay excessive sales loads. *See* 15 U.S.C. § 80a-22(b)(2). Thus, § 22(b)(2) embodies and reflects the SEC's substantial

---

[8] Distributors also argues that an August 19, 2003 SEC internal memorandum, submitted as Def.'s Addendum I, supports its position. The document, which is not authenticated, was purportedly written more than ten years ago by a staff member at the SEC. This is not a document with respect to which a court could take judicial notice and consider on a motion to dismiss. *See Locicero v. Leslie*, 948 F.Supp. 10, 12 (D. Mass. 1996)(court can only take judicial notice of "public records or indisputably authentic documents" at 12(b)(6) stage of proceedings). See also *Branch v. FDIC*, 825 F. Supp. 384, 398 n. 8 (D. Mass. 1993). Furthermore, on its face it does not represent the official views of the SEC and hence it does not "command any particular deference under *Chevron* or comparable doctrines." *Association of Int'l Automobile Manufacturers, Inc. v. Commissioner,* 208 F. 3d 1, 6 (1st Cir. 2000). At most, the Memorandum constitutes the unofficial statement by a member of the staff of the SEC, in which she express the "opinion" that there is no *per se* rule against a closed fund continuing to pay Rule 12b-1 fees. But the staff member goes on to emphasize that Rule 12b-1 fees cannot be charged unless **"the use of fund assets to promote distribution is reasonably likely to benefit fund shareholders"** and that the decision whether to continue Rule 12b-1 fees cannot be made by a board that is "dominated or unduly influenced by management" and the decision "will depend on the specific facts and circumstances relating to each fund's 12b-1 plan." *See* Def.'s Addendum I, at 2 (emphasis added).

oversight and supervisory powers over the NASD. *See id. See also United States v. NASD, Inc.*, 422 U.S. at 700, 732 (noting that under 1934 Act and ICA, SEC exercises a "significant oversight function over the rules and activities of the [NASD], and that the "SEC's supervisory authority over the NASD is extensive"). The provisions of § 22(b)(2) are inconsistent with, and demonstrate the fallacy of, Distributors' argument that § 22(b)(3) causes any rules promulgated by the NASD pursuant to § 22(b)(1) to predominate over the SEC's Rule 12b-1 or Congress' § 36(b).

### Section 22(b)(3) of the ICA

As Defendants have pointed out, § 22(b)(3) of the ICA provides that if any provisions of §§ 22(b)(1) or (2) are in conflict with any provision of any law of the United States in effect on December 14, 1970, the provisions of §§ 22(b)(1) and (2) shall prevail. *See* 15 U.S.C. § 80a-22(b)(3).

Obviously, § 22(b)(1) empowers the NASD to enact rules that could restrict the free-market pricing of mutual fund shares. *See* 15 U.S.C. § 80a-22(b)(1). *Cf. United States v. NASD, Inc.*, 422 U.S. 694 (1975)(considering whether certain restrictive sales practices that NASD members engaged in under § 22 of the ICA were immune from antitrust laws). Thus, the Senate Report explains that § 22(b)(3) was "designed to make it clear that no other provision of federal law, **including the antitrust laws**, prevents [the NASD] **from adopting rules**" to prohibit its members from charging excessive sales loads. *See id.* at 4913 (emphasis added). However, as demonstrated below, that statutory provision does not, and constitutionally could not, cause NASD Rule 2830 to "trump" § 36(b), as Distributors asserts.

**Section 22(b)(3) Is Inapplicable To The Claims at Bar Because There Is No Conflict Between NASD Rule 2830 And § 36(b)**.

Defendants assert that Plaintiff, by asserting § 36(b) claims at the same time as he acknowledges that Defendants have not violated Rule 2830, "seeks to set up a `conflict' between Rule 2830 and § 36(b)." Reply Memo at 2. In fact, it is Defendants who have manufactured that purported "conflict" in order to set up their (erroneous) argument that when such a conflict exists, "because of § 22(b)(3)...Rule 2830 trumps § 36(b)." Reply Memo at 5.

As demonstrated in Plaintiff's Opposition and herein, Rule 2830, the NASD's "maximum sales charge rule",[9] only prohibits its members from charging more than the maximum fees set forth therein. The fact that the Rule 12b-1 fees that Defendant Distributors charged the Fund do not exceed the maximum set by Rule 2830 would not preclude a court, after considering "**all the [other] facts in connection with the determination and receipt of such compensation,**"[10] from finding that Distributors breached their fiduciary duties under § 36(b) in connection with its receipt of that compensation.[11] See Pltf's Opp. at 26-8. The only court that has considered the intersection of the NASD Rule 2830 and § 36(b) has so held. See id. (quoting Pfeiffer, 2004 WL 1903075 at *5). Thus, there is no conflict between Rule 2830 and § 36(b).

Defendants erroneously assert that Pfeiffer is inapposite to the question of whether the NASD Rule has primacy over § 36(b), because it did not consider § 22(b)(3). See

---

[9]  See Def.'s Addendum C (describing Rule 2830 as "maximum sales charge rule").

[10]  Senate Report at 4910 (emphasis added).

[11]  Those other facts would include the Defendants' **admission** that the Rule 12b-1 Fees paid by the Fund do not benefit the Fund's shareholders, but only benefit "third party financing entities." Complaint, ¶51.

Reply Memo at 7-8. Defendants ignore that *Pfeiffer* expressly rejected the precise, erroneous interpretation of Rule 2830 which they advance here, pursuant to which they seek to create a conflict between Rule 2830 and § 36(b). The Court in *Pfeiffer* expressly rejected the defendants' argument that because their charges do not exceed the maximums set forth in Rule 2830, "the fees are *per se* reasonable," holding as follows:

> The defendants cite no case law for this proposition. Should the plaintiff succeed in showing that the fees were excessive...the defendant will not be able to defeat that showing by arguing that they could have charged even more....

*Id.* at *5.

Obviously, since Rule 2830, when properly interpreted, and § 36(b) are entirely compatible, it is §22(b)(3), not the Court's decision in *Pfeiffer,* that is inapplicable to the instant motion.

In fact, it is only if Rule 2830 is misinterpreted as a safe harbor provision, authorizing all charges within the limits of the rule and precluding liability under § 36(b) for any fees collected within the amounts specified therein, that it could conceivably conflict with § 36(b). Defendants have utterly failed to support their premise that Rule 2830 is such a safe harbor provision. Indeed, as demonstrated above, their own submissions illustrate that the SEC and the NASD itself have treated that rule as "an overall cap"on sales charges, setting the "highest figure" that NASD members may charge. *See* Def.'s Addendum C and G.

That is consistent with the Congressional intent and judicial interpretations of that statute, under which determinations of whether defendants have breached their fiduciary duties under § 36(b) are to be made in light of all the circumstances, and not according to a bright-line test. *See, e.g.*, Senate Report at 4910 (to determine liability under § 36(b), court should "look at all the facts in connection with the determination and receipt of such

-10-

compensation, including all services rendered to the fund"); *Gartenberg v. Merrill Lynch Asset Mgm't, Inc.*, 694 F.2d at 928 (liability under § 36(b) depends on whether distributors' compensation "represents a charge within the range of what would have been negotiated at arm's-length in light of all of the surrounding circumstances").

### Even If There Were A Conflict Between NASD Rule 2830 and § 36(b) of the ICA, The Rule Could Not Take Precedence Over § 36(b).

Even if a conflict existed between Rule 2830 and § 36(b) of the ICA (which is not the case), Distributors' argument that § 22(b)(3) of the ICA mandates that the NASD rule would predominate over, and repeal, the statutory provisions of § 36(b), is contrary to well established principles of statutory construction and would require this Court to find that §22(b)(3) is unconstitutional.

- Defendant Distributors' position would require this Court to interpret §§ 22(b)(3) and 36(b), which were enacted simultaneously in the 1970 Amendments to the ICA, such that one – § 22(b)(3) – would effectively eviscerate the other – § 36(b). This is contrary to the established principle that all of the provisions of a statute must be interpreted as a meaningful, harmonious whole. As the Supreme Court has observed:

> It is well established that our task in interpreting separate provisions of a single Act is to give the Act 'the most harmonious, comprehensive meaning possible' in light of the legislative policy and purpose.

*Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 631-632 (1973) *cited in McCuin v. Sec'y of Health & Human Services*, 817 F.2d 161,168 (1st Cir. 1987) ("In interpreting statutes . . . courts must try to give them a harmonious, comprehensive meaning, giving effect, when possible, to all provisions"). Further, in finding the legislative interpretation "most fairly said to be imbedded in the statute, in the sense of being most

harmonious with its scheme and with the general purpose Congress manifested," the "circumstances of the enactment of particular legislation may be particularly relevant . . . ." *Comm'r of Internal Revenue v. Engle*, 464 U.S. 206, 217 (1983).

Here, §§ 22(b)(3) and 36(b) are both part of same statute – the ICA, and they were enacted simultaneously in the same set of amendments to the ICA – the 1970 Amendments. Defendants' argument that in enacting § 22(b)(3) Congress delegated to the NASD, whose members Congress expressly recognized had a "conflict of interest," the power to enact rules that could eviscerate the very protection for mutual fund investors intended to be afforded by § 36(b), defies common sense, as well as established Supreme Court jurisprudence requiring courts to interpret all of the provisions of a statute harmoniously.

- To accept Defendant Distributors' argument, this Court would have to rule that § 22(b)(3) and NASD Rule 2830 repealed § 36(b), by implication. Such a ruling would violate the Supreme Court's holdings regarding "repeals by implication." As the Supreme Court recently held in *Branch v. Smith*, 538 U.S. 254, 273, 123 S. Ct. 1429, 1441 (2003):

> We have repeatedly stated, however, that absent "a clearly expressed constitutional intention" *Morton v. Mancari*, 417 U.S. 535, 551, 94 S. Ct.2474, 41 L. Ed. 2d 290 (1974), "repeals by implication are not favored." *Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Comm'n*, 393 U.S. 186, 193, 89 S. Ct. 354, 21 L. Ed. 2d 334 (1968). An implied repeal will only be found where provisions in two statutes are in "irreconcilable conflict," or where the latter act covers the whole subject of the earlier one and "is clearly intended as a substitute." *Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S. Ct. 349, 80 L. Ed. 351 (1936)....

Obviously, that criteria is not met here.

- It is well-established that "Congress may not...delegate its inherent lawmaking

authority." *City of New York v. Clinton*, 985 F. Supp. 168, 180 (D.D.C. 1998) citing *Loving v. U.S.*, 517 U.S. 748, 758 (1996). But that is precisely what Distributors argues Congress did when it enacted § 22(b)(3), since Distributors argues that in enacting § 22(b)(3) Congress empowered the NASD to repeal § 36(b) of the ICA. Established principles of statutory construction require courts, if at all possible, to interpret the provisions of a statute in a way that would not render the statute unconstitutional. As the Supreme Court noted in *Branch v. Smith*, 538 U.S. at 272: "Only when it is utterly unavoidable should we interpret a statute to require an unconstitutional result – and that is far from the situation here."

Those principles are further reasons why this Court must reject Distributors' erroneous interpretation of § 22(b)(3)**.**

**CONCLUSION**

Count I of the Complaint fully pleads a claim upon which relief can be granted. For all of the reasons set forth above, and in Plaintiff's Opposition, this Court should deny the Defendant Distributors' motion to dismiss Count I of the Complaint.

Dated: November 23, 2004.

                                        Respectfully submitted by the attorneys for the Plaintiff,

                                        /s/Edward F. Haber
Edward F. Haber BBO No. 215620
Theodore M. Hess-Mahan BBO No. 557109
Christine E. Morin BBO No. 600237
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
(617) 439-3939

-14-

**OF COUNSEL:**

Robert C. Schubert, Esq. (BBO No. 362242)
Juden Justice Reed, Esq.
Schubert & Reed LLP
Two Embarcadero Center, Suite 1600
San Francisco, CA 94111
(415) 788-4220