# POLLACK & KAMINSKY

114 WEST 47TH STREET, NEW YORK, NEW YORK 10036

TEL: (212) 575-4700
FAX: (212) 575-6560

DANIEL A. POLLACK
MARTIN I. KAMINSKY
EDWARD T. McDERMOTT

W. HANS KOBELT
JUSTIN CHU
ANTHONY ZACCARIA

*FILED
CLERK'S OFFICE*
*2005 MAY 13 P 12: 09*
*U.S. DISTRICT COURT*
*DISTRICT OF MASS*

May 12, 2005

**By Federal Express**

Honorable Mark L. Wolf
United States District Judge
U.S. District Court for the
 District of Massachusetts
United States Courthouse
1 Courthouse Way
Boston, MA 02210

      re:  <u>Bahe v. Franklin/Templeton Distributors, Inc.</u>
            Civil Action No. 04-11195 (MLW)

Dear Judge Wolf:

    Enclosed is a copy of an Opinion by Judge Tauro on the same subject matter as is involved in this lawsuit, *i.e.* 12b-1 fees paid by Funds "closed" to new investors. See particularly Section A "Rule 12b-1 Fees" pp. 4-8.

                                 Respectfully,

                                 Daniel A. Pollack
                                 Counsel for Franklin/Templeton
                                  Distributors, Inc. and
                                 William J. Lippman

cc:   Edward F. Haber, Esq.
       Counsel for Plaintiff
        (with enclosure)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ING PRINCIPAL PROTECTION FUNDS DERIVATIVE LITIGATION | * * * * * |

Civil Action No. 03-12198-JLT

## ORDER

May 9, 2005

TAURO, J.

This court hereby orders that:

1. <u>Defendants' Motion to Dismiss Plaintiffs' Second Consolidated Amended Derivative Complaint</u> [#29] is ALLOWED as to Counts I, II, and IV;

2. <u>Defendants' Motion to Dismiss Plaintiffs' Second Consolidated Amended Derivative Complaint</u> [#29] is DENIED as to Count III; and

3. <u>Independent Trustee Defendants' Motion to Dismiss Plaintiffs' Second Consolidated Amended Derivative Complaint</u> [#36] is ALLOWED as to Count V.

IT IS SO ORDERED.

<u>/s/ Joseph L. Tauro</u>
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              *
ING PRINCIPAL PROTECTION      *
FUNDS DERIVATIVE LITIGATION   *      Civil Action No. 03-12198-JLT
                              *
_____*
```

## MEMORANDUM

May 9, 2005

TAURO, J.

This derivative action is brought under section 36(b) of the Investment Company Act of 1940 ("ICA").[1] Plaintiffs allege that Defendants breached their fiduciary duties to certain mutual funds and shareholders by authorizing and receiving excessive compensation for distribution, advisory, and broker services during a period when the funds were closed to new investors.

### Background

The ING Equity Trust ("Trust") is an open-end investment company organized under the laws of Massachusetts and registered with the Securities and Exchange Commission ("SEC").[2] The Trust is governed by an eleven member Board of Trustees.[3] In 2001, the Trust began sponsoring a series of principal protection funds. Though these funds are no longer sold to new

---

[1] 15 U.S.C. § 80a-35(b).

[2] Second Consol. Am. Derivative Compl. ¶ 11. Unless otherwise noted, all of the background facts are drawn from the Second Consolidated Amended Derivative Complaint.

[3] Nine of the trustees are independent, seven of whom are named Defendants.

investors, shareholders continue to pay a variety of asset-based fees to Defendants ING Investments, LLC ("ING Investments"), ING Investment Management Co. ("ING Management"), and ING Funds Distributor, LLC ("ING Distributor").

Plaintiffs Walter Price, Heidi Hedlund, and Medea Palandjian own shares of ING Principal Protection Funds I, II, and IV (the "funds"). The life-spans of these funds are divided into three distinct time periods: the "Offering Phase," the "Guarantee Period," and the "Index Plus LargeCap Period." In the Offering Phase, shares of the funds are sold to the general public. Next, in the five year Guarantee Period, no additional shares are sold to the general public. But existing investors may purchase additional shares by reinvesting dividends. Finally, in the Index Plus LargeCap Period, shares of the funds will be offered, on a continuing basis, only to existing shareholders. The Plaintiffs' funds are currently in their Guarantee Periods.

The funds are also divided into several classes of shares having different fee structures. Class B and C shareholders pay ING Distributor an annual "distribution fee" equal to .75% of the net asset value of the funds.[4] Distribution fees compensate underwriters, dealers, and sales personnel in connection with the distribution and marketing of a mutual fund's shares.[5] Class A and Q shares, however, do not pay these annual distribution fees.[6] All shareholders pay ING Distributor an annual "service fee" equal to .25% of the net asset value of the funds.[7] Service fees

---

[4] See Second Consol. Am. Derivative Compl. ¶¶ 46, 50, 51, 52; Pls.' Post-Argument Supplemental Submission in Opp'n to Defs.' Mots. Dismiss ("Pls.' Post-Argument") at 1.

[5] 17 C.F.R. § 270.12b-1(b).

[6] Pls.' Post-Argument at 1.

[7] See Second Consol. Am. Derivative Compl. ¶¶ 46, 50, 51, 52; Pls.' Post-Argument at 1.

2

compensate broker-dealers for their ongoing personal services such as providing information and assistance to shareholders and for maintaining shareholder accounts.[8]

In addition, all classes of shares pay yearly "advisory fees" to ING Investments and ING Management. During the Guarantee Period, shareholders have paid, and continue to pay, annual advisory fees equal to .80% of the net asset value of the funds. These fees are designed to cover investment advisory and portfolio management services.

Plaintiffs allege that Defendants violated the fiduciary duties imposed by section 36(b) of the ICA, and breached fiduciary duties under Massachusetts law, by continuing to authorize and receive distribution and service fees during the Guarantee Period even though no additional shares were sold to new investors. Plaintiffs also claim that Defendants authorized and received excessive advisory fees.

## Discussion

Defendants have moved to dismiss Plaintiffs' Second Consolidated Amended Derivative Complaint. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[9] In considering a Rule 12(b)(6) motion to dismiss, "a court should not decide questions of fact."[10] Rather, this court must accept as true the facts alleged in

---

[8]Pfeiffer v. Bjurman, Barry & Assocs., No. 03-9741-DLC, 2004 WL 1903075, *1 (S.D.N.Y. Aug. 26, 2004); NASD Rule 2830(b)(9).

[9]Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)) (quotations omitted).

[10]Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987).

3

the complaint, construe all reasonable inferences in favor of Plaintiffs, and determine whether Plaintiffs can recover under any cognizable legal theory.[11]

It is significant to note that the instant motion was not been filed at the start of complex litigation, where "a party may not have all the facts."[12] Rather, this litigation is more than a year old. The parties have engaged in substantial discovery. And Plaintiffs have filed two amended complaints. Under such circumstances, "[a] complaint must contain 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'"[13] This court will not "conjure up unpled allegations" to save an otherwise deficient complaint.[14]

A.  Rule 12b-1 Fees

SEC Rule 12b-1 allows a mutual fund, under certain conditions, to compensate underwriters, dealers, and sales personnel with a percentage of the fund's assets "in connection with" the distribution and marketing of the fund's shares.[15] Rule 12b-1 also permits a mutual fund to compensate broker-dealers with asset-based service fees for providing shareholder services and

---

[11] Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998).

[12] Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993).

[13] Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

[14] Gooley, 851 F.2d at 514.

[15] 17 C.F.R. § 270.12b-1(b).

4

maintaining shareholder accounts.[16] A mutual fund may establish a fee structure that pays a large portion of these distribution and service charges up-front when investors purchase shares of the funds. Alternatively, a mutual fund may spread these charges over several years.[17]

Under section 22(b) of the ICA, the National Association of Securities Dealers, Inc. ("NASD") has the authority to place limits on the amount of fees that mutual funds may charge shareholders under Rule 12b-1.[18] NASD Rule 2830 limits asset-based sales charges (distribution fees) to a maximum of .75% of the fund's average annual net assets.[19] Service fees may not exceed .25% of the fund's annual net assets.[20] In addition, the cumulative amount of asset-based sales charges may not exceed 6.25% of the offering price of each share.[21] In this case, it is undisputed that the Rule 12b-1 fees at issue do not exceed these limits.[22] This does not mean, however, that the distribution and service fees are *per se* reasonable.[23]

---

[16]Pfeiffer v. Bjurman, Barry & Assocs., No. 03-9741-DLC, 2004 WL 1903075, *1 (S.D.N.Y. Aug. 26, 2004); NASD Rule 2830(b)(9).

[17]See Pfeiffer, 2004 WL 1903075, *1 ("A fund with a Rule 12b-1 fee thus permits shareholders to pay for sales-related and other expenses over time, rather than immediately on purchase.").

[18]Id. at *2; see 15 U.S.C. § 80a-22(a).

[19]NASD Rule 2830(d)(2)(E).

[20]NASD Rule 2830(d)(5).

[21]NASD Rule 2830(d)(2)(A).

[22]There is also no allegation that the funds' prospectuses fail to disclose or otherwise misrepresent material information regarding the funds' multiple classes of shares and their fee structures.

[23]See Pfeiffer, 2004 WL 1903075 at *5.

5

Mutual funds may not charge fees, of any kind, that are so disproportionately large that they bear no "reasonable relationship to the services *actually provided*."[24] Factors to consider in determining whether a fee is disproportionate include: "(1) the nature and quality of services provided to fund shareholders; (2) the profitability of the fund to the adviser-manager; (3) fall-out benefits; (4) economies of scale; (5) comparative fee structures; and (6) the independence and conscientiousness of the trustees."[25] A plaintiff's failure to plead these factors is not itself grounds for dismissal.[26] The allegations in the complaint, however, must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."[27] Accordingly, to state a claim that an excessive fee violates the fiduciary duties imposed by section 36(b) of the ICA, a complaint must contain "a short and plain statement" showing that the fee charged is so large that it bears no reasonable relationship to the relevant services actually provided.[28]

In the Second Consolidated Amended Derivative Complaint, Plaintiffs make no

---

[24] Id. (emphasis added); Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir. 1982) ("To be guilty of a violation of § 36(b), therefore, the adviser-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.").

[25] Wicks v. Putnam Inv. Mgmt., LLC, No. Civ.A.04-10988-GAO, 2005 WL 705360, *4 (D. Mass. Mar. 28, 2005) (citing Krinsk v. Fund Asset Mgmt., Inc., 875 F.2d 404, 409 (2d Cir. 1989)).

[26] Id.

[27] Fed. R. Civ. P. 8(a)(2); Wicks, 2005 WL 705360 at *4 (citing Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004)).

[28] In *Pfeiffer*, the plaintiff survived a motion to dismiss by alleging that the dramatic "increase in Rule 12b-1 fees 'lacked any reasonable relationship to actual expenses incurred for promotion and distribution, but rather, was substantially the result of appreciation of the assets in the Fund by about 43% year-to-date.'" Pfeiffer, 2004 WL 1903075 at *3 (quoting the complaint).

comparison between the sales-related services actually provided during the Offering Phase and the .75% distribution fees at issue. Instead, Plaintiffs simply allege that the distribution fees exceed the *de minimis* sales-related expenses incurred during the Guarantee Period when the funds were closed to new investors.[29] All of Plaintiffs' claims regarding distribution services are expressly limited to the Guarantee Period.[30] In this regard, Plaintiffs' allegations are impermissibly selective.

Plaintiffs acknowledge that, during the Offering Phase, shares of the funds were offered and sold to the general public.[31] SEC Rule 12b-1 permits fund-advisory firms to recover certain sales-related expenses previously paid out when distributing the fund's shares.[32] Compensation for past distribution services are considered payments made "in connection with" the distribution of a fund's shares.[33] Plaintiffs, therefore, cannot entirely confine their claim for excessive distribution fees to the *de minimis* sales-related services provided when the funds were closed to new investors. At a minimum, Plaintiffs must also allege that the distribution fees are disproportionate and unrelated to the sales-related services actually provided when shares of the funds were marketed and sold to the general public. Because the amended complaint does not

---

[29] Second Consol. Am. Derivative Compl. ¶¶ 42, 53.

[30] Id. ¶¶ 42, 53, 57, 58, 59.

[31] Id. ¶¶ 31, 34, 37.

[32] See SEC Memorandum dated June 9, 2003 (Gatti Decl. Ex. O at 73); SEC Memorandum dated August 16, 1993 (Gatti Decl. Ex. G at 3); NASD Notice 93-12, 1993 WL 1434082 (Question #6); see also Pfeiffer, 2004 WL 1903075 at *1; Sara Hansard, Fears Arise that a Spigot Will Close, Investment News, Jan. 19, 2004 (quoting Douglas Scheidt, associate director and chief counsel of the SEC's division of investment management).

[33] 17 C.F.R. § 270.12b-1(b).

7

contain this fundamental claim, or any facts that would support such an allegation, Plaintiffs fail to state a claim for breach of fiduciary duty in connection with the payment and receipt of distribution fees.[34]

Plaintiffs also fail to state a claim with respect to the .25% service fees. In the amended complaint, Plaintiffs do not allege that the service fees exceed the ongoing expenses associated with maintaining shareholder accounts. Plaintiffs allege no facts that, if true, would indicate that the service fees are unrelated to the shareholder services provided by broker-dealers. Defendants' Motion to Dismiss is ALLOWED as to Count I of the Second Consolidated Amended Derivative Complaint.

B.   Advisory Fees

With respect to the advisory fees, Plaintiffs adequately allege that Defendants breached their fiduciary duties in authorizing and receiving excessive compensation. The amended complaint alleges sufficient facts to state a claim that these fees are so disproportionately large that they bear no reasonable relationship to the advisory services actually rendered on behalf of the funds.[35] Defendants' Motion to Dismiss is DENIED as to Count III.

---

[34] See Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 143 (3d Cir. 2002) (concluding that "dismissal for failure to state a claim with respect to excessive compensation was appropriate since Plaintiff failed to allege any facts indicating that the fees received were disproportionate to services rendered"); Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 327 (4th Cir. 2001) (explaining that "in order to determine whether a fee is excessive for purposes of Section 36(b), a court must examine the relationship between the fees charged and the services rendered by the investment advisor").

[35] See Second Consol. Am. Derivative Compl. ¶¶ 89-126; see also Strigliabotti v. Franklin Res., Inc., No. C 04-00883 SI, 2005 WL 645529, *3 (N.D. Cal. Mar. 7, 2005) (denying a motion to dismiss where the complaint alleged, inter alia, that "defendants charge plaintiffs much higher fees than other clients for equivalent advisory services").

8

C.   Plaintiffs' State Law Claims

Defendants have also moved to dismiss Plaintiffs' derivative state law claims because Plaintiffs failed to make pre-suit demands on the ING Equity Trust Board of Trustees. Under Massachusetts General Laws chapter 156D, section 7.42, "demand must be made prior to the commencement of every derivative case, whether or not the directors are independent with respect to the matter subject to the demand."[36] Section 7.42 provides, in relevant part, "No shareholder may commence a derivative proceeding until: (1) a written demand has been made upon the corporation to take suitable action." There are no exceptions.

This "universal demand" statute took effect on July 1, 2004.[37] On July 30, 2004, without making pre-suit demand, Plaintiffs amended the complaint, adding seven of the independent trustees as Defendants.[38] Plaintiffs brought a claim against the trustees for breach of fiduciary duty under Massachusetts law (Count V). The trustees argue that Count V should be dismissed for failure to comply with the new universal demand requirement. Plaintiffs contend that the amendment adding the independent trustees should relate back to the initial complaint filed in November of 2003.

The requirement of pre-suit demand is a substantive law of Massachusetts,[39] and the question of when a derivative proceeding "commences" under the universal demand statute is a

---

[36] Demoulas v. Demoulas Super Markets, Inc., No. 033741BLS, 2004 WL 1895052, *1 n.3 (Mass. Super. Aug. 2, 2004).

[37] See Mass. Gen. Laws ch. 156D, § 7.42.

[38] Plaintiffs did not seek leave of this court prior to amending the complaint.

[39] Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96-97 (1991).

9

question of state law.[40] The statute, though, does not define when a derivative proceeding commences with respect to demand. Under Rule 15(c) of the Massachusetts Rules of Civil Procedure, an action against a party added by amendment is ordinarily deemed commenced on the date that the original complaint was filed. There is, however, an exception to Rule 15(c) that this court finds instructive.

In *Nett v. Bellucci*, plaintiffs brought an action in federal court against a physician for negligence in the prenatal care and delivery of their child.[41] Plaintiffs amended the complaint to add a claim against a radiologist. The radiologist then moved to dismiss the amended complaint, arguing that the claims against him were barred by a Massachusetts medical malpractice statute of repose.[42] In answering questions certified by the First Circuit, the Massachusetts Supreme Judicial Court refused to relate back the amendment to the original complaint because literal application of Rule 15(c) "would yield a result contrary to the purposes underlying statutes of repose."[43]

This court, therefore, will consider the purposes underlying the universal demand statute to determine whether Plaintiffs' claim adding the seven independent trustees relates back to the

---

[40] Nett *ex rel.* Nett v. Bellucci, 269 F.3d 1, 7 (1st Cir. 2001) ("[T]he Federal Rules of Civil Procedure determine the date from which various timing requirements begin to run. They do not, however, affect the commencement of a lawsuit. Rather, state commencement rules apply.") (quoting Larsen v. Mayo Med. Ctr., 218 F.3d 863, 867 (8th Cir. 2000)).

[41] Id. at 3.

[42] See Mass. Gen. Laws ch. 231, § 60D; Mass. Gen. Laws ch. 260, § 4.

[43] Nett v. Bellucci, 774 N.E.2d 130, 135 (Mass. 2002). Creating another exception to Rule 15(c), the SJC concluded that relation back principles have no application to the presentment requirement of Mass. Gen. Laws ch. 258, § 4. See Weaver v. Commonwealth, 438 N.E.2d 831, 835 (Mass. 1982).

10

original complaint. The primary purpose of the universal demand statute is to protect the authority of the board of directors to decide whether to pursue a lawsuit on behalf of the corporation.[44] And, like a statute of repose, the universal demand statute has no exceptions. Literal application of relation back principles, therefore, would defeat the clear purpose of the universal demand statute. As a result, the amendment adding the independent trustees does not relate back to the original complaint.

Plaintiffs also argue that the newly enacted universal demand requirement only applies to derivative suits brought on behalf of corporations. But a business trust "in practical effect is in many respects similar to a corporation."[45] This court believes that Massachusetts courts will apply the requirement of universal, pre-suit demand to derivative actions brought on behalf of business trusts. The Independent Trustees' Motion to Dismiss is ALLOWED as to Count V.

In addition, Defendants move to dismiss Counts II and IV because Plaintiffs, again, failed to make pre-suit demand on the Board of Trustees. Plaintiffs brought these derivative state law claims against Defendants ING Distributor, ING Investments, and ING Management *before* the universal demand statute took effect. This does not mean, however, that Plaintiffs' failure to make pre-suit demand is excused. For derivative proceedings commenced prior to July 1, 2004, pre-suit demand is required unless demand would be "futile." Demand is deemed futile when a

---

[44] See Harhen v. Brown, 730 N.E.2d 859, 865 (Mass. 2000) ("The rationale behind the demand requirement is that, as a basic principle of corporate governance, the board of directors or majority of shareholders should set the corporation's business policy, including the decision whether to pursue a lawsuit.").

[45] Swartz v. Sher, 184 N.E.2d 51, 53 (Mass. 1962) (citing Bomeisler v. M. Jacobson & Sons Trust, 118 F.2d 261, 265 (1st Cir. 1941) and State St. Trust Co. v. Hall, 41 N.E.2d 30 (Mass. 1942)).

11

majority of directors allegedly "participated in wrongdoing, or are otherwise interested."[46] If a plaintiff does not make pre-suit demand, then plaintiff must plead with particularity the reasons for failure to make such demand.[47]

A majority of the trustees on the ING Equity Trust Board of Trustees are considered "independent" or disinterested under the ICA, and Plaintiffs do not contend otherwise.[48] Under Massachusetts law, such trustees are "deemed to be independent and disinterested when making any determination or taking any action as a trustee."[49] Plaintiffs argue, nonetheless, that demand would have been futile because the trustees "specifically voted to approve [the fees], and thereafter specifically voted to continue [paying the fees]."[50]

Simply because the Board of Trustees approved the fee contracts at issue does not render the independent trustees "interested."[51] "Where mere approval of the corporate action, absent self-interest or other indication of bias, is the sole basis for establishing the directors' 'wrongdoing' and hence for excusing demand on them, plaintiff's suit should ordinarily be

---

[46] Harhen, 730 N.E.2d at 865. In Harhen, the SJC adopted the definition of an "interested" director from 1 ALI Principles of Corporate Governance: Analysis and Recommendations ("ALI Principles") §§ 1.15 and 1.23 (1994). Id. at 864.

[47] See Fed. R. Civ. P. 23.1.

[48] See Second Consol. Am. Derivative Compl. ¶ 25.

[49] Mass. Gen. Laws ch. 182, § 2B.

[50] Second Consol. Am. Derivative Compl. ¶¶ 137(a), 138(a). See also Pls.' Mem. of Law in Opp'n to Defs.' Mots. Dismiss at 31.

[51] See, e.g., Grossman v. Johnson, 89 F.R.D. 656, 659 (D. Mass. 1981) (explaining that "mere approval by directors of the alleged unlawful action does not constitute sufficient participation in that conduct to excuse demand upon them").

12

dismissed."[52] Moreover, when Plaintiffs originally brought the claims found in Counts II and IV of the current version of the complaint, the trustees were *not* Defendants in this suit.[53] Because the only allegation of wrongdoing attributed to the trustees is their approval of the fee contracts at issue,[54] Massachusetts law continues to consider a majority of the trustees independent.[55] Demand is not excused, and Defendants' Motion to Dismiss is ALLOWED as Counts II and IV.

AN ORDER WILL ISSUE.

/s/ Joseph L. Tauro
United States District Judge

---

[52] In re Kauffman Mut. Fund Actions, 479 F.2d 257, 265 (1st Cir. 1973).

[53] ALI Principles § 1.23(c)(2), therefore, does not apply.

[54] Second Consol. Am. Derivative Compl. ¶¶ 45, 47, 49, 60, 74, 83, 85, 134, 137, 138.

[55] See ALI Principles § 1.23 and the official comments.

13